Ex. 1-D

# EXHIBIT 1-D —

Deposition of Bank's FRCP 30(b)(6) witness

Ex. 1-D

# In The Matter Of:

*Wells Fargo Bank, N.A. vs.*
*SFR Investments Pool 1, LLC, et al.*

---

*30(b)(6) Stephanie Bradford*
*April 8, 2016*

---



depo international
worldwide deposition services

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 3 of 40

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

## Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

```
WELLS FARGO BANK, N.A., a national )
banking association,               )
                                   )
         Plaintiffs,               )
                                   ) CASE NO:
     vs.                           ) 2:15-cv-00796-APG-CWH
                                   )
SFR INVESTMENTS POOL 1, LLC, a     )
Nevada limited liability company;  )
SOMMERSET HOMEOWNERS ASSOCIATION,  )
a Nevada non-profit corporation;   )
ALESSI & KOENIG, LLC, a Nevada     )
limited liability company,         )
                                   ) DEPOSITION OF:
         Defendants.               ) STEPHANIE BRADFORD
_____) PURSUANT TO NRCP 30(B)(6)
                                   ) PERSON MOST KNOWLEDGEABLE
SFR INVESTMENTS POOL 1, LLC, a     ) WELLS FARGO BANK, N.A.
Nevada limited liability company;  )
                                   ) Taken at:
         Counter-Claimant,         ) Kim Gilbert Ebron
                                   ) 7625 Dean Martin Drive
     vs.                           ) Las Vegas, Nevada
                                   )
WELLS FARGO BANK, N.A., a national ) on Friday,
banking association; JOEL LYNN     ) April 8, 2016, 1:17 p.m.
ABELSON, an individual,            )
                                   )
         Counter-Defendant/        )
         Cross-Defendant.          )
_____)
```

Job No. 22203
Depo International - Las Vegas
Reported by:  Andrea Martin, CSR, RPR, NV CCR 887
NCRA Certified Realtime Reporter No. 821201

## Page 2

1  APPEARANCES:

2  For Plaintiffs:

3          SNELL & WILMER, LLP
           BY:  WAYNE O. KLOMP, ESQ.
4          3883 Howard Hughes Parkway
           Suite 1100
5          Las Vegas, Nevada 89169
           TEL:  (702) 784-5200
6          FAX:  (702) 784-5252
           E-mail:  WKlomp@swlaw.com
7

8  For Defendants SFR Investments Pool 1, LLC:

9          LAW OFFICES OF KIM GILBERT EBRON
           BY:  DIANA S. CLINE EBRON, ESQ.
10         Suite 110
           7625 Dean Martin Drive, Suite 110
11         Las Vegas, Nevada 89139
           TEL:  (702) 485-3300
12         FAX:  (702) 485-3301
           E-mail:  Diana@kgelegal.com
13

14  For Defendants Sommerset Homeowners Association:

15         LIPSON, NEILSON, COLE, SELTZER & GARIN
           BY:  H. SUNNY JEONG, ESQ.
16         Suite 120
           9900 Covington Cross Road
17         Las Vegas, Nevada 89144
           TEL:  (702) 382-1500
18         FAX:  (702) 382-1512
           E-mail:  SJeong@lipsonneilson.com
19

20

21

22

23

24

25

## Page 3

I N D E X

| EXAMINATION: | PAGE |
|---|---|
| EXAMINATION BY MS. EBRON | 6 |
| EXAMINATION BY MS. JEONG | 87 |

## Page 4

E X H I B I T S

| MARKED | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 1 | Notice of 30(b)(6) Deposition of Wells Fargo Bank, N.A. | 12 |
| EXHIBIT 2 | Note, 1404 Padre Bay Drive, Las Vegas, Nevada 89108 | 14 |
| EXHIBIT 3 | Deed of Trust, WFB 000001 to WFB 0000020 | 16 |
| EXHIBIT 4 | Grant, Bargain, Sale Deed, WFB 000012 to WFB 000021 | 23 |
| EXHIBIT 5 | Grant, Bargain, Sale Deed, WFB 000023 to WFB 000024 | 23 |
| EXHIBIT 6 | Release of Notice of Delinquent Assessment Lien, WFB 000031 | 25 |
| EXHIBIT 7 | Notice of Default and Sell Under Deed of Trust Important Notice, WFB 000032 to WFB 000034 | 26 |
| EXHIBIT 8 | Notice of Rescission of Notice of Default and Election to Sell Under Deed of Trust WFB 000035 to WFB 000036 | 28 |
| EXHIBIT 9 | Release of Lien, WFB 000037 | 29 |
| EXHIBIT 10 | Notice of Delinquent Assessment (Lien), WFB 000038 | 30 |
| EXHIBIT 11 | Assignment of Deed of Trust, WFB 000039 to WFB 000040 | 32 |
| EXHIBIT 12 | Notice of Claim of Lien for Solid Waste Service, WFB 0000041 to WFB 000041 | 35 |
| EXHIBIT 13 | Notice of Default and Election to Sell Under Deed of Trust Important Notice, WFB 000042 to WFB  000044 | 35 |

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 4 of 40

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

**Page 5**

| | |
|---|---|
| 1 | EXHIBIT 14   Notice of Default and Election to    36 |
| 2 | Sell Under Homeowners Association Lien, WFB 000045 |
| 3 | EXHIBIT 15   Release of Lien For Solid Waste    37 |
| 4 | Service, WFB 0000046 |
| 5 | EXHIBIT 16   Notice of Trustee's Sale, WFB    37 |
| | 000047 |
| 6 | EXHIBIT 17   Notice of Lien, WFB 000048    38 |
| 7 | EXHIBIT 18   Notice of Trustee, WFB 000049    38 |
| 8 | EXHIBIT 19   Notice of Claim of Lien for Solid    39 |
| 9 | Waste Service, WFB 000050 |
| 10 | EXHIBIT 20   Substitution of Trustee, WFB    39 |
| | 000051 to WFB 000052 |
| 11 | EXHIBIT 21   Trustee's Deed Upon Sale, WFB    40 |
| 12 | 000053 and WFB 0000 to WFB 000054 |
| 13 | EXHIBIT 22   Notice of Rescission of Notice of    41 |
| 14 | Default and Election to Sell Under Deed of Trust, WFB 000055 to WFB 000056 |
| 15 | EXHIBIT 23   Notice of Default and Election to    41 |
| 16 | Sell Under Deed of Trust Important Notice, WFB 000060 to WFB 000065 |
| 17 | EXHIBIT 24   Certificate, State of Nevada    46 |
| 18 | Foreclosure Mediation Program, WFB 000067 |
| 19 | EXHIBIT 25   Notice of Trustee's Sale, WFB    48 |
| 20 | 000068 to WFB 000070 |
| 21 | EXHIBIT 26   Notice of Lis Pendens, WFB 000071    49 |
| | to WFB 000073 |
| 22 | EXHIBIT 27   Notice of Default and Election to    50 |
| 23 | Sell Under Homeowners Association Lien |
| 24 | EXHIBIT 28   Wells Fargo Bank N.A.'s Responses    79 |
| 25 | to SFR Investments Pool 1, LLC's Interrogatories |

**Page 6**

1     Las Vegas, Nevada; Friday, April 8, 2016
2              1:17 p.m.
3              -oOo-
4          STEPHANIE BRADFORD,
5 having been first duly sworn by the court reporter
6 to testify to the truth, the whole truth, and
7 nothing but the truth, was examined and testified
8 under oath as follows:
9              EXAMINATION
10 BY MS. EBRON:
11   Q   Good afternoon.  I'm Diana Cline Ebron.  I
12 represent SFR Investments Pool 1, LLC, in this
13 matter.
14       Can you please state your name for the
15 record.
16   A   Stephanie Bradford, last name
17 B-R-A-D-F-O-R-D.
18   Q   Thank you.  Are you employed?
19   A   I am.
20   Q   Who's your employer?
21   A   Wells Fargo.
22   Q   What's your business address?  Or what --
23   A   I don't know.
24   Q   -- city?
25   A   Oh, okay.  Portland, Oregon.

**Page 7**

1   Q   What's your position at Wells Fargo?
2   A   Loan verification analyst.
3   Q   How long have you been employed by
4 Wells Fargo?
5   A   I have been employed by Wells Fargo for
6 over five years.
7   Q   So 2011?  2010?
8   A   2010 or '11.  2010.
9   Q   Have you held any other position at
10 Wells Fargo besides loan verification analyst?
11   A   Yes.
12   Q   What other positions?
13   A   Bankruptcy specialist and a -- it was
14 default, servicing default.
15   Q   Any others?
16   A   No.
17   Q   Have you had your deposition taken before?
18   A   Yes.
19   Q   About how many times?
20   A   More than 30.
21   Q   So you are pretty familiar with the ground
22 rules of a deposition?
23   A   I am.
24   Q   Have you also testified at trials?
25   A   Yes.

**Page 8**

1   Q   About how many times?
2   A   I don't know.  More than 50.
3   Q   In the trials and depositions that you've
4 testified at, are they in a certain geographical
5 area or all over the country?
6   A   They're all over the United States.
7   Q   Where did you work before Wells Fargo?
8   A   I worked for -- well, within my five and a
9 half, six years, I had a six-month break from
10 Wells Fargo, and I worked for Hillsborough Law
11 Group.
12       Prior to joining Wells Fargo, I worked for
13 The Defender Association of Philadelphia for five
14 years.
15   Q   So what were the dates of your employment
16 with The Defender Association in Philadelphia?
17   A   I believe August 2005 to April or
18 May 2010.  Yes.  And then I started with Wells I
19 think in June 2010, May or June.
20   Q   What was your position with the Defender
21 Association of Philadelphia?
22   A   Assistant defender.
23   Q   Did you hold any other positions there?
24   A   No, I don't believe so.
25   Q   What were your duties as an assistant

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 9

1  defender?
2    A  I represent individuals that were --
3  indigent individuals that were accused of crimes in
4  Philadelphia county.
5    Q  Anything else?
6    A  Besides that, no.
7    Q  When you worked for the Hillsborough Law
8  Group, what was your position?
9    A  I think it was staff attorney or associate
10  attorney. I don't remember which one.
11    Q  What type of law did you practice?
12    A  I did criminal defense and family law.
13    Q  Were you employed before you worked for
14  The Defender Association of Philadelphia?
15    A  I had jobs before that, but I didn't have
16  a regular job -- immediately before The Defender
17  Association, I was in law school, so I had summer
18  employment, and prior to that, I'd had jobs.
19    Q  Where did you attend law school?
20    A  Duke University.
21    Q  So what were the dates that you were at
22  Duke for law school?
23    A  I believe August of 2002 until June of --
24  May -- May or June of 2005. I think it was May,
25  actually.

Page 10

1    Q  Do you have an undergraduate degree?
2    A  Yes.
3    Q  In what?
4    A  What is my degree in?
5    Q  Yes.
6    A  Political science.
7    Q  Where did you attend undergrad?
8    A  Occidental.
9    Q  What year did you graduate?
10    A  In 2000.
11    Q  Do you have any other experience in the
12  mortgage and lending industry besides working for
13  Wells Fargo?
14    A  Any experience that I'm drawing on today,
15  no. I worked for a bank in undergrad, but that
16  hasn't prepared me to testify today.
17    Q  What was your position at the bank that
18  you worked at as an undergrad?
19    A  I don't remember what my position was. I
20  don't know. Some kind of student training position.
21    Q  Are you licensed to practice law?
22    A  I am inactive, but, yes, I have been
23  licensed to practice.
24    Q  Where have you been licensed?
25    A  In Oregon and Pennsylvania.

Page 11

1    Q  Anywhere else?
2    A  No.
3    Q  Do you have any other professional
4  licenses or certifications?
5    A  No.
6    Q  What are your duties as a loan
7  verification analyst?
8    A  I work on accounts in litigation, and I
9  work with our in-house counsel and our local counsel
10  to bring cases to resolution. That includes doing
11  research, reviewing pleadings, discovery, attending
12  depositions, and other court appearances.
13    Q  Do you have a regular caseload that you
14  work, like, specific files, or is your -- or are
15  your assignments based on appearances?
16    A  I do have a regular number of cases that
17  I -- that I work on, yes, and then I also do
18  appearances.
19    Q  Are there any other deals that you have as
20  a loan verification analyst besides --
21    A  There may, but those were the primary
22  duties.
23    Q  What were your duties as a bankruptcy
24  specialist?
25    A  I worked on accounts in bankruptcy. I

Page 12

1  wrote some scripting. That's about it.
2    Q  What do you mean by "writing scripting,"
3  like a transcript when you talk to people?
4    A  Yeah, scripting for individuals that
5  interact with our borrowers on the phone.
6    Q  What were your duties as a
7  default -- well, in default servicing?
8    A  I worked on high balance accounts in
9  default that we were servicing or owned. Actually,
10  not servicing, that Wells owned.
11        (Deposition Exhibit 1 was marked for
12        identification.)
13  BY MS. EBRON:
14    Q  Could you look at the document that's been
15  marked Exhibit 1.
16    A  Yes.
17    Q  Do you recognize this document?
18    A  Yes.
19    Q  What is it?
20    A  This is the notice of deposition.
21    Q  And it's for Wells Fargo Bank N.A.;
22  correct?
23    A  It is, yes.
24    Q  Did you have a chance to review this
25  notice before today?

**Depo International**
(702) 386-9322 or (800) 982-3299 | www.depointernational.com

**30(b)(6) Stephanie Bradford - April 8, 2016**
**Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.**

Page 13

1    A   Yes.
2    Q   Can you look at Page 2, please.  There's
3  some definitions, including property that refers to
4  the real property located at 1404 Padre Bay Drive
5  Las Vegas, Nevada 89108, Parcel No. 138-26-114-027.
6        Whenever I talk about "the property"
7  today, I'm going to be referring to the property on
8  Padre Bay.  Okay?
9    A   Yes.
10   Q   Also, it defines the homeowners
11 association as Somerset Homeowners Association.
12       Whenever I refer to "the association,"
13 unless otherwise specified, I'm talking about the
14 Somerset Homeowners Association.  Okay?
15   A   Yes.
16   Q   In addition, there is reference to the
17 "association foreclosure sale."  When I talk about
18 that, I'm talking about the auction held on
19 January 9th, 2013, by Alessi & Koenig, LLC, on
20 behalf of the association.
21       So whenever I ask you for information or
22 something that happened before the date of the
23 association foreclosure sale, I'm going to be
24 talking about something that happened before
25 January 9th, 2013.  Okay?

Page 14

1    A   Yes.
2    Q   I also may refer to Alessi & Koenig, LLC,
3  as "Alessi."  Is that okay?
4    A   Yes.
5    Q   There are topics listed in the notice
6  starting on Page 3 and going to Page 7.
7        Did you have a chance to review each of
8  those topics?
9    A   Yes.
10   Q   And are you the person that Wells Fargo
11 has designated to testify on its behalf for those
12 topics?
13   A   Yes.
14       (Deposition Exhibit 2 was marked for
15       identification.)
16 BY MS. EBRON:
17   Q   Can you look at what's been marked
18 Exhibit 2, please.  Do you recognize this document?
19   A   Yes.
20   Q   What is it?
21   A   This is the note that corresponds to the
22 property on Padre Bay for Mr. Abelson.
23   Q   Sorry.  Do you know:  Is this a copy of
24 the note as it exists today?
25       And just to be clear, there's some

Page 15

1  information across the top of it that references a
2  case number and a document number and a filing date
3  number, and that's because I got this copy of it
4  from an attachment to the motion for summary
5  judgment filed by Wells Fargo.
6        So without that information, do you know
7  if this is a copy of the way the note looks today?
8    A   Yes.
9    Q   How do you know that?
10   A   Because this is the same -- this appears
11 to be the same as the copy that I've seen in our
12 imaging system.
13   Q   Have you seen a copy of the original note?
14 Or have you seen the original note with the original
15 signature?
16   A   No, I've never seen the original.
17   Q   Do you know where it's located?
18   A   No.  I didn't look to see.  It is in one
19 of our vaults.  I don't know which vault it is,
20 though.
21   Q   Is there a place you could look to find
22 out where it is located?
23   A   Yes.
24   Q   Where's that?
25   A   The mortgage servicing platform will

Page 16

1  advise which vault it is in.
2    Q   If you could look at the last page, it
3  says "Page 5 of 5."
4        Do you know if there are any other
5  endorsements besides the ones shown on this page?
6    A   I don't believe that there are.
7    Q   Do you know if there are any allonges to
8  the note that are not included with it?
9    A   No.  I believe there's an allonge to the
10 deed of trust, which there usually isn't, but I
11 believe there was an allonge that was attached that
12 I recall seeing, but usually, no, those are with the
13 note, and I don't recall seeing an allonge that was
14 ever part of this note.
15       (Deposition Exhibit 3 was marked for
16       identification.)
17 BY MS. EBRON:
18   Q   Can you look at what's been marked as
19 Exhibit 3.
20   A   Oh, yeah.  There it is.
21   Q   Do you recognize this document?
22   A   Yes.
23   Q   What is it?
24   A   This is the deed of trust that was
25 recorded February 15th, 2007, for Joel Lynn

**30(b)(6) Stephanie Bradford - April 8, 2016**
**Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.**

Page 17

1 Abelson's property that we've been discussing.
2    Q    And is this the deed of trust that was
3 recorded to secure the note that we marked as
4 Exhibit 2?
5    A    It was, yes.
6    Q    Who originated this loan?
7    A    Mylor Financial.
8    Q    And when was that?
9    A    February 6th, 2007.
10    Q    Was Wells Fargo involved in the
11 origination process?
12    A    We were not.
13    Q    When did Wells Fargo first obtain an
14 interest in the loan?
15    A    I don't know off the top of my head.
16    Q    Is there a place you would look to find
17 out that information?
18    A    It's in the mortgage servicing platform.
19 There would be a date that would indicate how we
20 acquired our servicing rights or the date and how.
21    Q    Do you have an approximate time when
22 Wells Fargo became the servicer of this loan?
23    A    No.
24    Q    Has Wells Fargo ever been the owner of the
25 loan or the investor?

Page 18

1    A    No, we have not.
2    Q    Who is the investor?
3    A    I believe the servicer -- I don't know,
4 actually.  I would have to look at a document for --
5 I don't know.
6    Q    Where would you look to find that
7 information?
8    A    It would be in the mortgage servicing
9 platform.  There's a page that indicates how we were
10 servicing.
11    Q    Well, we can go ahead and keep going
12 through some of these documents, and then if you
13 think of it, then you can just let me know.
14        Is that all right?
15    A    Yes, because I may -- we may actually own
16 this loan.  I don't see it in any of these
17 documents.
18        THE WITNESS: Did you bring anything, any
19 documents?
20 BY MS. EBRON:
21    Q    Let's just go ahead and we'll keep going
22 through these documents --
23    A    Sorry.
24    Q    -- and if we need to take a break -- I
25 don't know if there's a way for you to look at the

Page 19

1 mortgage servicing platform or to call somebody to
2 just get the information on the record, that will be
3 great?
4        MR. KLOMP: I think as we go through these
5 documents, it will refresh your recollection as
6 well.
7        THE WITNESS: It should.
8        MS. EBRON: Perfect.
9 BY MS. EBRON:
10    Q    I did want to ask you:  Do you know the
11 role of Mortgage Electronic Registration Systems,
12 Inc, with this deed of trust?
13    A    Yes.  Mylor Financial -- this was a
14 uniform document that after they originated it,
15 they -- I believe they transferred their beneficiary
16 interest to MERS, but I may be wrong on that.
17    Q    So looking at the page of the deed of
18 trust that is Bates Stamped WFB00002, in
19 Paragraph E, it says, "MERS is Mortgage Electronic
20 Registration, Inc.  MERS is a separate corporation
21 and is acting solely as nominee for lender and
22 lender's successors and assigns.  MERS is the
23 beneficiary under the security instrument."
24        Do you see that?
25    A    Yes.

Page 20

1    Q    Is that your understanding?
2    A    Yes.
3    Q    In Paragraph M on that same page, it says
4 "'Escrow Items,'" and it says, "means those items
5 that are described in Section 3."
6        Do you see that?
7    A    I do, yes.
8    Q    Then if you turn to Section 3, which is on
9 Page 4 of 14 or the page Bates Stamped WFB000004, it
10 says, "Funds for Escrow Items.  Borrower shall pay
11 to lender on the day periodic payments are due under
12 the note, until the note is paid in full, the sum
13 (Funds) to provide for payment of amounts due for,
14 (a) taxes and assessments and other items which can
15 attain priority over this security instrument as a
16 lien or encumbrance on the property."
17        Do you see that?
18    A    I do, yes.
19    Q    Do you know if the taxes were ever
20 escrowed for this loan?
21    A    I don't know.  No, I don't recall ever
22 seeing anything about the escrow.
23    Q    Where would you look to find out if the
24 taxes were escrowed for this loan?
25    A    In the mortgage servicing platform or the

**30(b)(6) Stephanie Bradford - April 8, 2016**
**Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.**

Page 21

1  payment history, but I don't recall ever looking to
2  see if they were.
3     Q   Do you know if dues for the homeowners
4  association were ever escrowed for this loan?
5        MR. KLOMP: Objection:  Scope.
6     A   Well, I don't know if -- well, they -- I
7  don't believe that they were, because they weren't
8  being paid, and I saw a number of notices that they
9  weren't being paid, so they would not have been if
10 the -- if the taxes and insurance were escrowed,
11 they were not part of that.
12 BY MS. EBRON:
13    Q   Can you turn to the page that is Bates
14 Stamped WFB000016.  Do you recognize this?
15    A   Yes.
16    Q   What is it?
17    A   This is the -- this is a rider to the deed
18 of trust.  It's a planned unit development rider.
19    Q   Do you know the purpose of including a
20 planned unit development rider with a deed of trust?
21       MR. KLOMP: Objection:  Form.
22    A   It was part of a planned community, and it
23 required one, I guess.
24 BY MS. EBRON:
25    Q   Is it your understanding that the planned

Page 22

1  unit development rider gives notice to the borrower
2  of an obligation to pay assessments to a homeowners
3  association?
4        MR. KLOMP: Objection:  Form.
5     A   I don't know that I'm able to say what
6  notice the borrower had or what he understood it to
7  be.  But, I mean, it's clearly part of a planned --
8  a planned property unit.
9        But can you rephrase your question?
10 BY MS. EBRON:
11    Q   Sure.  This is a separate rider that the
12 borrower was required to sign?
13    A   That's correct.
14    Q   And it contains information about the
15 property being located within a planned unit
16 development; correct?
17    A   Yes.
18    Q   And it also includes information, in
19 Paragraph F, on the page Bates Stamped WFB000017,
20 that states that "If borrower does not pay PUD dues
21 and assessments when due, then lender may pay them."
22    A   That's correct.
23    Q   And it goes on to say, "any amounts
24 disbursed by the lender under this Paragraph F shall
25 become additional debt of borrower secured by the

Page 23

1  security instrument."
2     A   Yes.
3        (Deposition Exhibit 4 was marked for
4        identification.)
5  BY MS. EBRON:
6     Q   Can you look at what's been marked
7  Exhibit 4, please.  Do you recognize this document?
8     A   Yes.
9     Q   What is it?
10    A   This is a grant, bargain, sale deed that
11 was recorded 2/15/07.
12    Q   Is this something that is contained in
13 Wells Fargo's business records?
14    A   It is, yes.
15       (Deposition Exhibit 5 was marked for
16       identification.)
17 BY MS. EBRON:
18    Q   Can you look at what's been marked
19 Exhibit 5.
20    A   Yes.
21    Q   Do you recognize this document?
22    A   Yes.  This is also a grant, bargain, sale
23 deed that was recorded in Clark County 2/15/2007.
24    Q   And is this your understanding -- is it
25 your understanding that this grant, bargain, sale

Page 24

1  deed transferred the property at issue in this case
2  to the borrower?
3     A   Yes.
4     Q   And this is something that's contained in
5  Wells Fargo's business records?
6     A   It is, yes.
7     Q   Do you know if the originating lender
8  considered the amount of the homeowners association
9  dues when approving the borrower for the loan?
10       MR. KLOMP: Objection:  Scope.
11    A   I would -- I have no knowledge of what
12 they considered and if they considered that as a
13 factor.
14 BY MS. EBRON:
15    Q   What documents did you look at in
16 preparation for your deposition?
17    A   I looked at the note, the
18 mortgage -- well, the note, the documents in our
19 imaging system from the -- within a specified date
20 period; I looked at the documents -- all the
21 documents that were produced in this case as well as
22 the request for production, the request for
23 admissions, and the interrogatories.
24    Q   Anything else?
25    A   I don't believe so.

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 25

1    Q   Did you review any of Wells Fargo's
2   computer systems for servicing platforms?
3    A   I did not access the account in the
4   mortgage servicing platform, but I did review our
5   documents in our imaging system.
6    Q   Did you speak to anyone to obtain
7   information to testify today?
8    A   Other than counsel, no.
9    Q   Do you recall when Wells Fargo first
10   obtained an interest?  We can keep going with the
11   documents if you don't.
12    A   I don't recall.
13    Q   Okay.
14       (Deposition Exhibit 6 was marked for
15       identification.)
16   BY MS. EBRON:
17    Q   Can you look at what's been marked
18   Exhibit 6.
19    A   Yes.
20    Q   Do you recognize this document?
21    A   Yes.
22    Q   What is it?
23    A   It's a release of notice of delinquent
24   assessment lien recorded 12/19/2008, Clark County
25   Recorder.

Page 26

1    Q   Is this something that was contained in
2   Wells Fargo's business records?
3    A   Yes.
4    Q   Do you know when it was put into
5   Wells Fargo's business records?
6    A   I don't recall the date, no, but I didn't
7   look to -- I didn't look to make sure that I
8   remembered the dates that we received the release of
9   the notice of the delinquent assessments.  I believe
10   there were a number of these that I saw within our
11   imaging system.
12    Q   Do you know if it was around the time that
13   it was recorded, which it looks like it was December
14   of 2008, or if it would have been sometime after the
15   association foreclosure sale?  Before the sale?
16    A   I don't know.  I wasn't looking to see
17   what date the release of the notice is in there.
18       (Deposition Exhibit 7 was marked for
19       identification.)
20   BY MS. EBRON:
21    Q   Can you look at what's been marked
22   Exhibit 7.
23    A   Yes.
24    Q   Do you recognize this document?
25    A   I do, yes.

Page 27

1    Q   What is it?
2    A   This is a notice of default and election
3   to sell under deed of trust important notice.
4   That's recorded 3/13/2009 with the Clark County
5   Recorder.
6    Q   Does this notice of default refer to the
7   deed of trust that we marked as Exhibit 3?
8       MR. KLOMP:  Objection:  Form.
9    A   It does, yes.
10   BY MS. EBRON:
11    Q   Who is National Default Servicing
12   Corporation?
13    A   That was the trustee that we were using.
14   I believe it was the second trustee, but at this
15   time I believe it was the trustee.
16    Q   And at this time, in March of 2009,
17   Wells Fargo had an interest?
18    A   Yes.
19    Q   Do you know if there were any payments
20   made on the loan by the borrower after this notice
21   of default?
22    A   I don't believe that there were, but I'm
23   not positive.  I don't know.
24    Q   On the page that is Bates Stamped
25   WFB000033, the second paragraph from the bottom that

Page 28

1   starts off, "at a breach of."  Do you see that?
2    A   Um-hmm.
3    Q   It mentions that there had not been
4   payment for installments, principal, interest, and
5   impounds which became due on November 1st, 2008.
6       Do you see that?
7    A   I do, yes.
8    Q   Do you know if the loan was still due for
9   payments that were due starting on November 1st,
10   2008?
11       MR. KLOMP:  Objection:  Scope.
12    A   I don't recall.
13       (Deposition Exhibit 8 was marked for
14       identification.)
15   BY MS. EBRON:
16    Q   Can you look at what has been marked as
17   Exhibit 8, please.
18    A   Yes.
19    Q   Do you recognize this document?
20    A   Yes.
21    Q   What is it?
22    A   This is the notice of rescission of notice
23   of default and election to sell under deed of trust.
24   It is recorded 4/1/2009 with the Clark County
25   Recorder.

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 29

1   Q   And it was National Default Servicing
2  Corporation who caused this to be recorded on behalf
3  of Wells Fargo?
4   A   That's correct.
5   Q   Do you know why the notice of default was
6  rescinded?
7   A   I don't know.
8   Q   Is there a place that you would look or
9  someone you would talk to, to find that information?
10  A   The notes in the mortgage servicing
11  platform would advise as to why we requested the
12  rescission.  There also may be notes in LPS, which
13  would be the platform that communicated with the
14  trustee.  I would anticipate that there would be
15  notes in there that would indicate why they were
16  requesting that.
17       (Deposition Exhibit 9 was marked for
18       identification.)
19  BY MS. EBRON:
20  Q   Can you look at what's been marked
21  Exhibit 9, please.
22  A   Yes.
23  Q   Do you recognize this document?
24  A   I do, yes.
25  Q   What is it?

Page 30

1   A   This is a release of lien that is recorded
2  5/21/2009, Clark County Recorder.
3   Q   Is this something contained in
4  Wells Fargo's business records?
5   A   It is, yes.
6       (Deposition Exhibit 10 was marked for
7       identification.)
8  BY MS. EBRON:
9   Q   Can you look at what's been marked
10  Exhibit 10, please.
11  A   Yes.
12  Q   Do you recognize this document?
13  A   Yes.
14  Q   What is it?
15  A   This is also -- well, this is a notice of
16  delinquent assessment lien recorded 3/31/2011 with
17  the Clark County Recorder.
18  Q   Is this something contained in
19  Wells Fargo's business records?
20  A   It is, yes.
21  Q   Do you know when Wells Fargo obtained a
22  copy of this notice of delinquent assessment lien?
23  A   I didn't look.  All the documents are
24  stamped with a date that they are inputted into the
25  imaging system, but I -- for this particular

Page 31

1  document, I wasn't -- I wasn't attempting to
2  remember the date that this came in.
3   Q   You mentioned earlier that when you
4  reviewed the imaging system, it was for a specific
5  date period; is that right?
6   A   That's correct.
7   Q   What date period did you review the
8  imaging system for?
9   A   2012, January 2012 through February 2013.
10  Q   So if it was within the documents that you
11  reviewed, then it was received sometime between
12  January 2012 and February 2013?
13  A   If this is -- so I reviewed our
14  production, and then I also reviewed documents in
15  our imaging system that are unrelated to this
16  litigation but were received.  So I reviewed every
17  document that we received between January 2012 and
18  February 2013, but I also reviewed separately all
19  the documents that were part of our production.
20      So this wouldn't be included within that
21  date range of the documents that I was looking at in
22  our imaging system, but I did review it as part of
23  the documents that were produced in the case.
24  Q   Thank you.
25  ///

Page 32

1       (Deposition Exhibit 11 was marked for
2       identification.)
3  BY MS. EBRON:
4   Q   Can you look at what's been marked
5  Exhibit 11, please.
6   A   (Complies.)
7   Q   Do you recognize this document?
8   A   Yes.
9   Q   What is it?
10  A   This is an assignment of the deed of trust
11  that is recorded 6/16/2011 with the Clark County
12  Recorder.
13  Q   Who is it from, and who is it to?
14  A   It is from MERS to Wells Fargo.
15  Q   This isn't the first time that Wells Fargo
16  obtained an interest in the loan; right?
17  A   No.
18  Q   That was sometime back at least in 2009 or
19  before?
20  A   I don't recall exactly the time that we
21  obtained an interest.  The assignment of the deed of
22  trust does not signify the date that we obtained an
23  interest.  It had to do with the default servicing.
24  Q   What do you mean "default servicing"?
25  A   The assignment of the deed of trust is

**30(b)(6) Stephanie Bradford - April 8, 2016**
**Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.**

Page 33

1 done when the borrower's delinquent and we are
2 preparing to go to foreclosure or pursuing that as a
3 potential option.
4    Q   Can you look at the title that says
5 "assignment of deed of trust" and then up, right
6 above that to the left, it says "MIN."
7       Do you see that?
8    A   Yes.
9    Q   Do you know what that is?
10    A   I believe that that's the number that you
11 can reference this document within MERS's system.
12 It is not a number that we use within our system,
13 but I believe that's how they can pull the document.
14    Q   If you look back and compare it with the
15 same one on Exhibit 3, the other MIN --
16    A   On the deed of trust, it should be the
17 same.  Yes, it's the same.
18    Q   Have you seen the MERS milestones for this
19 case?
20    A   I have not.  I didn't look for them.
21       MR. KLOMP: Just lodge an objection as to
22 the scope.
23 BY MS. EBRON:
24    Q   When Wells Fargo first obtained its
25 interest in the loan, did it know the property was

Page 34

1 located within a homeowners association?
2    A   I don't know.
3    Q   Who would know that?
4    A   Whether we knew that this loan had an HOA
5 for was subject to one?  Well, as soon as we had the
6 deed of trust, we would have known that, and we
7 would have received that shortly after we had any
8 interest in the property, but I -- I don't know -- I
9 don't know when that would have been or if that
10 would even have been a factor that we would have
11 considered.
12 BY MS. EBRON:
13    Q   Do you know if Wells Fargo reviewed a copy
14 of the declaration of CC&Rs for the association
15 before obtaining its interest in the loan?
16       MR. KLOMP: Objection:  Scope.
17    A   I don't believe that is part of the
18 process.
19 BY MS. EBRON:
20    Q   Do you know if the originating lender
21 reviewed a copy of the CC&Rs and before getting a
22 loan on the property?
23       MR. KLOMP: Objection:  Scope.
24    A   I don't know.
25 ///

Page 35

1       (Deposition Exhibit 12 was marked for
2       identification.)
3 BY MS. EBRON:
4    Q   Can you look at what's been marked
5 Exhibit 12.
6    A   Yes.
7    Q   Do you recognize this document?
8    A   Yes.
9    Q   What is it?
10    A   This is a notice of claim of lien for
11 solid waste service.  This is recorded 8/1/2011,
12 with Clark County Recorder.
13    Q   Is this part of Wells Fargo's business
14 records?
15    A   It is, yes.
16       (Deposition Exhibit 13 was marked for
17       identification.)
18 BY MS. EBRON:
19    Q   Can you look at what's been marked
20 Exhibit 13, please.
21    A   Yes.
22    Q   Do you recognize this document?
23    A   Yes.
24    Q   What is it?
25    A   This is a notice of default and election

Page 36

1 to sell under deed of trust important notice.  This
2 is recorded 8/12/2011 with the Clark County
3 Recorder.
4    Q   This notice of default was also filed by
5 National Default Servicing Corporation on behalf of
6 Wells Fargo; correct?
7    A   Yes.
8    Q   And this notice of default mentions, on
9 the second page Bates Stamped WFB000043, a failure
10 to pay amounts that become due on November 1, 2008,
11 as well.  Do you see that?
12    A   Yes.
13       (Deposition Exhibit 14 was marked for
14       identification.)
15 BY MS. EBRON:
16    Q   Can you look at what's been marked
17 Exhibit 14, please.  Do you recognize this document?
18    A   I do, yes.
19    Q   What is it?
20    A   This is a notice of default and election
21 to sell under homeowners association lien recorded
22 8/18/2011 with Clark County Recorder.
23    Q   Is this something that's contained in
24 Wells Fargo's business records?
25    A   Yes.

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 37

1      (Deposition Exhibit 15 was marked for
2      identification.)
3  BY MS. EBRON:
4      Q    Can you look at what has been marked as
5  Exhibit 15, please.
6      A    Yes.
7      MS. EBRON: Off the record for one second.
8      (Pause in proceedings.)
9  BY MS. EBRON:
10      Q    Is Exhibit 15 something contained in
11  Wells Fargo's business records?
12      A    It is, yes.
13      (Deposition Exhibit 16 was marked for
14      identification.)
15  BY MS. EBRON:
16      Q    Can you look at what's been marked
17  Exhibit 16, please.
18      A    Yes.
19      Q    Do you recognize this document?
20      A    I do, yes.
21      Q    What is it?
22      A    This is the notice of trustee's sale
23  recorded 7/17/2012 with the Clark County Recorder.
24      Q    Is this something that's contained in
25  Wells Fargo's business records?

Page 38

1      A    It is, yes.
2      (Deposition Exhibit 17 was marked for
3      identification.)
4  BY MS. EBRON:
5      Q    Can you look at the document that's been
6  marked Exhibit 17?
7      A    Yes.
8      Q    Do you recognize this document?
9      A    Yes.
10      Q    What is it?
11      A    This is a notice of lien recorded
12  8/24/2012 with the Clark County Recorder.
13      Q    Is this something contained in
14  Wells Fargo's business records?
15      A    Yes.
16      (Deposition Exhibit 18 was marked for
17      identification.)
18  BY MS. EBRON:
19      Q    Can you look at what's been marked
20  Exhibit 18.
21      A    Yes.
22      Q    Do you recognize this document?
23      A    Yes.
24      Q    What is it?
25      A    This is a notice of trustee sale recorded

Page 39

1  12/7/2012 with the Clark County Recorder.
2      Q    Is this something contained in
3  Wells Fargo's business records?
4      A    It is, yes.
5      (Deposition Exhibit 19 was marked for
6      identification.)
7  BY MS. EBRON:
8      Q    Can you look at what's been marked Exhibit
9  19, please.  Do you recognize this document?
10      A    Yes.
11      Q    Notice of claim of lien for solid waste
12  service recorded January 31st, 2013, with the
13  Clark County Recorder.
14      Is this something that's contained in
15  Wells Fargo's business records?
16      A    It is, yes.
17      (Deposition Exhibit 20 was marked for
18      identification.)
19  BY MS. EBRON:
20      Q    Can you look at what's been marked as
21  Exhibit 20, please.
22      A    Yes.
23      Q    Do you recognize this document?
24      A    Yes.
25      Q    What is it?

Page 40

1      A    Substitution of trustee recorded 3/7/2013
2  with the Clark County Recorder.
3      Q    Who is being substituted as trustee
4  through this document?
5      A    Charles Myers is being substituted by
6  National Default Servicing Corporation.
7      Q    Do you know why it wasn't until March of
8  2013 that National Default Servicing Corporation was
9  substituted as trustee when it was recording
10  documents for several years before that?
11      A    I don't know.
12      (Deposition Exhibit 21 was marked for
13      identification.)
14  BY MS. EBRON:
15      Q    Can you look at what's been marked
16  Exhibit 21.
17      A    Yes.
18      Q    Do you recognize this document?
19      A    I do, yes.
20      Q    What is it?
21      A    The trustee's deed upon sale recorded
22  January 11th, 2013, with the Clark County
23  Recorder.
24      Q    Is this something that's contained in
25  Wells Fargo's business records?

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 41

1    A   It is, yes.
2    Q   Do you know when it was received into
3  Wells Fargo's business records?
4    A   I don't know.
5        (Deposition Exhibit 22 was marked for
6        identification.)
7  BY MS. EBRON:
8    Q   Can you look at what's been marked
9  Exhibit 22, please.  Do you recognize this document?
10   A   Yes.
11   Q   What is it?
12   A   Notice of rescission and notice of default
13 and election to sell under deed of trust recorded
14 3/8/2013 with the Clark County Recorder.
15   Q   Do you know why the notice of default was
16 rescinded?
17   A   I don't know.
18       (Deposition Exhibit 23 was marked for
19       identification.)
20 BY MS. EBRON:
21   Q   Can you look at what's been marked as
22 Exhibit 23.
23   A   Yes.
24   Q   Do you recognize this document?
25   A   I do, yes.

Page 42

1    Q   What is it?
2    A   Notice of default and election to sell
3  under deed of trust important notice recorded
4  September 25th, 2013, with the Clark County
5  Recorder.
6    Q   In the last paragraph on the first page,
7  the one Bates Stamped WFB000060, it -- like on the
8  other present notices of default, it says that --
9  there's a defendant with the installments of
10 principal and interest which became due on
11 November 1st, 2008.  Do you see that?
12   A   Yes.
13   Q   And this was also recorded by National
14 Default Servicing Corporation on behalf of
15 Wells Fargo; right?
16   A   It was, yes.
17   Q   If you'd turn to the page that is Bates
18 Stamped WFB000063.  It's an affidavit of authority
19 to exercise the power of sale.  Do you see that?
20   A   Yes.
21   Q   And it refers to the deed of trust that we
22 marked as Exhibit 3; right?
23   A   Yes.
24   Q   In Paragraph 4 on that page, it says, "The
25 full name and business address of the current holder

Page 43

1  of the note secured by the deed of trust."  And then
2  it says "Wells Fargo."
3    A   Yes?
4    Q   Do you see that?
5    A   Yes.
6    Q   And then it says, in Paragraph 5, the full
7  name and business address of the current beneficiary
8  of record of the deed of trust is Wells Fargo?
9    A   Yes.
10   Q   And then on the next page, it -- in
11 Paragraph 6, it says that the servicer is also
12 Wells Fargo?
13   A   Yes.
14   Q   Does this affidavit of authority refresh
15 your recollection as to whether or not Wells Fargo
16 is the investor on this loan?
17   A   No, not whether the investor, but it
18 appears that we are the holder of the note.
19       MS. JEONG:  Sorry.  "We were the holder
20 of..."
21       THE WITNESS:  The holder of the note.
22 BY MS. EBRON:
23   Q   On the next page Bates Stamped
24 WFB000065 --
25   A   Yes.

Page 44

1    Q   -- it has Paragraph 10, which references
2  an assignment, the one that we marked as Exhibit 11.
3        Do you see that?
4    A   Yes.
5    Q   Ask in your review of the file, did you
6  see any other assignments of the deed of trust
7  either recorded or unrecorded?
8    A   I did not.  I don't believe there were any
9  others.
10   Q   Do you know if there's any other entity
11 that claims an interest in the note?
12   A   Can you rephrase?
13   Q   Is there any entity besides Wells Fargo
14 who claims any sort of interest in the note, like
15 ownership or any other type of interest?
16   A   Yes.  It's a VA guarantied loan, so they
17 would have an interest.
18   Q   Anyone else?
19   A   No.
20   Q   So when you say something's "VA
21 guaranteed," what does that mean?
22   A   That the VA has an interest in -- well,
23 the VA has guaranteed the loan to ensure that if the
24 borrower does not meet the obligations, then I
25 believe the VA -- I don't know.  My understanding

**30(b)(6) Stephanie Bradford - April 8, 2016**
**Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.**

Page 45

1  was the borrower was a member of the armed services.
2  When he took out this loan, he was not required to
3  purchase mortgage insurance because the VA
4  guaranteed the loan should the borrower default and
5  the owner lose money on the loan.
6      I believe -- actually, I don't know how we
7  go about seeking reimbursement or whatever through
8  the VA.  I don't know how the process works.
9    Q   Do you know if there has been any type of
10 a claim or something made to the VA for
11 reimbursement?
12     MR. KLOMP: Objection: Scope.
13   A   Reimbursement for what?
14 BY MS. EBRON:
15   Q   Oh, for the borrower not paying since
16 November of 2008.
17     MR. KLOMP: Same objection.
18   A   Reimbursement for what?  For the payments
19 or the loss or --
20 BY MS. EBRON:
21   Q   Either.  Anything.
22   A   I -- the only thing I recall seeing was a
23 request for reimbursement for appraisal fees from
24 the VA.  I don't recall seeing anything else.
25   Q   Thank you.

Page 46

1      (Deposition Exhibit 24 was marked for
2      identification.)
3  BY MS. EBRON:
4    Q   Can you look at what's been marked
5  Exhibit 24.
6    A   Yes.
7    Q   Do you recognize this document?
8    A   Yes.
9    Q   What is it?
10   A   Certificate, State of Nevada Foreclosure
11 Mediation Program recorded 2/12/2014, Clark County
12 Recorder.
13   Q   Is this something that relates to the deed
14 of trust we marked as Exhibit 3?
15   A   It does, yes.
16   Q   And is this something that National
17 Default Servicing Corporation had recorded on behalf
18 of Wells Fargo?
19   A   It is, yes.
20   Q   Do you know what it means "non-applicable
21 property"?
22   A   I do.  I believe that the State of Nevada
23 foreclosure mediation program had an exemption for
24 none primary residence, and I believe the
25 non-applicable property was related to him not

Page 47

1  getting -- him not being entitled to the benefits of
2  the mediation program because it wasn't a primary
3  residence.
4    Q   So it's your understanding that the
5  property on Padre Bay is not the borrower's primary
6  residence?
7      MR. KLOMP: Objection:  Form.
8    A   I believe at the time that we -- or at the
9  time that this was recorded, it was not his primary
10 residence.
11 BY MS. EBRON:
12   Q   Do you know if it was before?
13   A   It was.
14   Q   Do you know if it was after the time that
15 this was recorded?
16   A   Do I know if he moved back into the
17 property?
18   Q   Do you have any information about when he
19 left the property?
20   A   I do recall seeing documents that
21 indicated when he moved to California, but I
22 don't -- was it 2011?  I -- I don't -- I don't
23 recall the specific date.
24   Q   Okay.  But do you think that it was before
25 the date of the association foreclosure sale in

Page 48

1  January of 2013?
2    A   It was.
3      (Deposition Exhibit 25 was marked for
4      identification.)
5  BY MS. EBRON:
6    Q   Can you look at what's been marked
7  Exhibit 25, please.
8    A   Yes.
9    Q   Do you recognize this document?
10   A   Yes.
11   Q   What is it?
12   A   Notice of trustee sale recorded 2/12/2014
13 with the Clark County Recorder.
14   Q   And this is something that National
15 Default Servicing Corporation had recorded on behalf
16 of Wells Fargo?
17   A   It is, yes.
18   Q   It mentions a date and time of sale as
19 March 7, 2014.  Do you see that?
20   A   I do, yes.
21   Q   Do you know if that sale went forward?
22   A   I don't actually know.
23   Q   On the second page Bates Stamped
24 WFB000069, in the second paragraph it says, "Said
25 Sale will be made in an "as-is" condition, without

**30(b)(6) Stephanie Bradford - April 8, 2016**
**Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.**

Page 49

1  covenant or warranty, express or implied, regarding
2  title, possession, or encumbrances.
3        Do you see that?
4     **A   I do.**
5     Q   Do you know why that was included in the
6  notice of trustee sale?
7        **MR. KLOMP:** Objection:  Form.
8     **A   I don't know.**
9  BY MS. EBRON:
10    Q   Have you seen other notices of trustee's
11  sale similar to this one?
12    **A   I've seen a lot of notices of trustee's**
13  **sale.  I'm not -- I haven't -- I haven't reviewed**
14  **them to determine the similarities or differences,**
15  **so I don't -- I don't know if this would be standard**
16  **or atypical.**
17    Q   So you're not sure if that language is
18  usually included in these types of notices?
19        **MR. KLOMP:** Objection:  Scope.
20    **A   I don't know.**
21        **(Deposition Exhibit 26 was marked for**
22        **identification.)**
23  BY MS. EBRON:
24    Q   Can you look at what has been marked
25  Exhibit 26.

Page 50

1     **A   Yes.**
2     Q   Do you recognize this document?
3     **A   Yes.**
4     Q   What is it?
5     **A   The notice of lis pendens.**
6     Q   Is this something that's contained in
7  Wells Fargo's business records?
8     **A   It is, yes.**
9     Q   Do you know when it came to be in
10  Wells Fargo's business records?
11    **A   I do not.  It is indicated that it's**
12  **recorded February 20th, 2014, with the Clark**
13  **County Recorder, but I don't know the date that it**
14  **came into our business records or that we received**
15  **notice.**
16        **(Deposition Exhibit 27 was marked for**
17        **identification.)**
18  BY MS. EBRON:
19    Q   Can you look at the document that's been
20  marked as Exhibit 27, please.
21    **A   Yes.**
22    Q   Do you recognize this document?
23    **A   I do.**
24    Q   What is it?
25    **A   Notice of default and election to sell**

Page 51

1  **under homeowners association lien recorded**
2  **8/18/2011, with the Clark County Recorder.**
3     Q   Is this something that is contained in
4  Wells Fargo's business records?  I just asked you
5  that question.  Never mind.
6        Do you know who stamped "Received
7  September 13, 2011" and "DOS" at the top?
8     **A   Yes, DOS.**
9     Q   What is DOS, or who is DOS?
10    **A   I forget what it stands for.**
11    Q   Is it a department within Wells Fargo?
12    **A   It is.**
13    Q   Do you know who stamped "DSM Servicing
14  Mail Support X2302-04E, Sep 9, 2011, # 14"?
15    **A   Yes.**
16    Q   Who was that?
17    **A   DSM Servicing Mail Support.  DSM is Des**
18  **Moines.  I don't know what the "No. 14" is, but the**
19  **September 9th, 2011, would have been the date that**
20  **that department received the -- received this**
21  **document.**
22    Q   And just to the right of that and beneath
23  it there's No. "152015" and a "VS" and
24  "708-0204165757."
25        Do you know what those numbers or that

Page 52

1  writing goes to?
2     **A   I don't know who put the writing on there,**
3  **but that 708 would have -- and the preceding**
4  **numbers -- that's the account number for the**
5  **specific loan.**
6        **The VS, I'm not exactly certain, but I**
7  **would assume that is the vendors keep number that**
8  **correlates to this loan.**
9     Q   The what number?
10    **A   It's vendor's scape or vendor's scape or**
11  **vendor's scope.  It is a platform that we use for**
12  **accounts that are in default.**
13    Q   And then the next page is Bates Stamped
14  WFB000075.  Do you know what this is?
15    **A   This is the envelope that this document**
16  **came in.**
17    Q   And this was stored in Wells Fargo's
18  business records, next to the notice on the previous
19  page?
20    **A   Is it stored next to it?**
21    Q   Yeah, is it --
22    **A   It's all part of the same document.**
23    Q   Okay.
24    **A   So the envelope that the document came in**
25  **is part of the same image file.**

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 16 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 53

1   Q   Do you know what the handwritten
2   information is just to the left of the address?
3       A   Are you asking me to tell you -- I don't
4   know what that means.  It appears to say 1-LIR or
5   potentially 1-L/R.  It is stamped "Lien Release,"
6   maybe Minneapolis, but I don't know what the
7   handwriting is.
8       Q   So the stamp that says "Received
9   September 1st, 2011, Lien Release," and then
10  starts with an "M" -- I'm not sure -- and then
11  "X9901-11R" -- do you know what that stamp means?
12      A   Yes.  It's -- I'm trying to think of how
13  to describe it.
14          It's just, like, various identification
15  codes within Wells Fargo that can receive or send
16  mail, so it's like MAC codes.  I don't know what
17  "MAC" stands for, but it's just an identification
18  code to identify where this was received.
19          So "Lien Release," and then it's a
20  little blurry, but I believe it's "MIN," and if you
21  look at the address that it is sent to, it was sent
22  to Minneapolis, so I would assume the "MIN" is
23  "Minneapolis."
24      Q   Okay.  In the address there, it looks like
25  it references the MIN again that was on the

Page 54

1   assignment and also the deed of trust.  Is that
2   right?
3       A   Yeah.  Yes.
4       Q   And so from what you've told me, do you
5   think it's accurate to say this envelope containing
6   the notice of default was received in Minneapolis in
7   or around September 1st, 2011, and then by
8   September 9th, 2011, it made its way to
9   Des Moines, and then on September 13th, 2011,
10  somebody from DOS had a copy of it?
11      A   Yes.
12      Q   Were there any other foreclosure notices
13  that you saw within the imaging system that had
14  similar stamps or that you could tell were with an
15  envelope from Alessi & Koenig?
16      A   I don't believe so.  I know that the --
17  this notice of default and election to sell had the
18  envelope.  The actual notice of trustee sale -- hold
19  on.
20      Q   It may be either Exhibit 16 or Exhibit 18.
21      A   Yes.  The notice of trustee sale -- not
22  that one.  And, actually, we -- we have, in our
23  imaging system, a copy of -- I believe at least
24  three notices of trustee's sale from Alessi.
25          I did not see -- aside from this one,

Page 55

1   Exhibit 27, I didn't see the envelopes that
2   indicated date stamps that they were received.  I
3   know that the -- sorry.  Just one second.
4           The trustee's deed upon sale that was
5   recorded January 11th, 2013 -- I didn't see an
6   envelope for that, and I also didn't see -- and I
7   looked for an envelope for -- so there is no
8   envelope for the one that was recorded 7/17/12.
9       Q   And that's Exhibit Number --
10      A   -- 16.  I don't know.  Is it right here?
11  It would be.  No?
12          MR. KLOMP: Let me take a look real quick.
13  I think it's No. 18.
14          MS. EBRON: We can go off the record for a
15  second.
16          (Off-the record discussion held.)
17      A   Exhibit 18, the notice of trustee's sale
18  that was recorded 12/7/2012 -- I looked for the
19  envelope.  It was not part of this imaged file, and
20  it was -- we -- we don't have a copy of it.
21  BY MS. EBRON:
22      Q   Of the envelope?
23      A   No, we don't.
24      Q   But you do have a copy of the notice?
25      A   Yes.

Page 56

1       Q   Okay.  I just want to make sure on that.
2           Does Wells Fargo have a practice, policy,
3   or procedure to make a note in its servicing
4   platform when it receives mail like notices of
5   default or notices of sale?
6       A   Do we now or at this -- which --
7       Q   During the time these notices were being
8   sent out, so between August of 2011 and the day of
9   the association foreclosure sale, in January of
10  2013.
11      A   I don't know.
12          So as you can see, sometimes documents are
13  received by departments that don't necessarily have
14  anything to do with the handling of the specific
15  document, and so a document might be received by the
16  lien release department that wouldn't then know to
17  go into the mortgage servicing platform and indicate
18  the date that it came in.  So if this came to DOS,
19  then, yes, there would be a notation within the
20  mortgage -- there should be a notation within the
21  mortgage servicing platform, the date that this came
22  in, and -- that's the end of that sentence.
23  BY MS. EBRON:
24      Q   Okay.  Do you know if there's a note
25  indicating when the notice of default that's marked

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 57

1  as Exhibit 27 was received by any of the departments
2  within Wells Fargo?
3      A   I don't believe there is, no.
4      Q   So the lack of the note doesn't
5  necessarily mean that a document wasn't received;
6  right?
7      A   That's -- yes, I will agree with that.
8  And we did receive this document.
9      Q   Right.  I know there's -- there's stamps
10  saying it was received, so I just want to check and
11  see.
12      A   Oh, I'm sorry.  I'm looking at 18.  You're
13  looking at a different exhibit.
14      Q   So 27 was received, but 18 was also
15  received.  And was 16 also received?
16      A   All the documents that have been Bates
17  Stamped Wells Fargo, "WFB," they've all been
18  received --
19      Q   Okay.  Do you --
20      A   -- which I think is everything, all of the
21  exhibits.
22      Q   Do you know what action Wells Fargo took
23  after receiving the notice of default that's in
24  Exhibit 27?
25          So we know it was transferred to a few

Page 58

1  different departments, but beyond that, do you know
2  what action Wells Fargo took in relation to this
3  notice?
4      A   I don't believe we took any action.  I
5  believe there's a cancelation of this one, though,
6  that we received in one of the other exhibits, but I
7  don't believe we took any action as a result of
8  receiving this.
9      Q   What about the notice of trustee's sale in
10  Exhibit 16?  Do you know if there was any action
11  taken by Wells Fargo after receiving that notice?
12      A   No, I don't believe that there was.  But I
13  believe that this one was -- we had received a
14  cancelation on this.
15      Q   In Exhibit 18, after receiving that
16  notice, did Wells Fargo take any action?
17      A   No.
18      Q   Did Wells Fargo ever try to contact the
19  association about this property?
20      A   Prior to the foreclosure sale, I don't
21  believe so.
22      Q   Did Wells Fargo ever try to contact Alessi
23  & Koenig, LLC, about this property before the
24  foreclosure sale?
25      A   No.

Page 59

1      Q   Did Wells Fargo ever contact the borrower
2  about the association foreclosure sale?
3      A   Sales, plural.
4          No.  We had contact with our borrower, but
5  I don't believe that it was as a result of receiving
6  these notices.
7      Q   Did Wells Fargo ever contact the
8  ombudsman's office in Nevada Real Estate Division
9  about this property?
10      A   I don't know.
11      Q   Did Wells Fargo attend the sale on
12  January -- in January of 2013?
13      A   We didn't receive notice of that sale
14  until after the sale had already occurred, so we did
15  not attend.
16      Q   How do you know that?
17      A   Because I looked in the imaging system to
18  see when we had received the notice, and we received
19  it after the sale had -- it is imaged in our
20  sometime after the sale had occurred.
21      Q   Do you know when it was imaged?
22      A   I do.  Now I'm not sure.  I believe that
23  it is either January 11th, 2013, or
24  January 13th, 2013, but I don't recall now.
25          It was a couple days after, so it was

Page 60

1  either January 11th or January 13th, 2013,
2  but...
3      Q   So it was imaged on that date, but do you
4  know if it was actually received on that date?
5      A   I don't know.
6      Q   Were there any stamps on the notice that
7  was imaged on January 11th?
8      A   No.  So our imaged copy looks exactly like
9  this.  This is a duplicate of what our copy looks
10  like, unlike the other one, where -- unlike
11  Exhibit 27, Exhibit 18 doesn't bear any stamps to
12  show what date different departments would have
13  touched the document or handled it, and there was no
14  envelope that was included with this imaged file.
15      Q   So I'm just looking at the -- well, let me
16  ask you this:  Do you know the date that the notice
17  of default in Exhibit 27 was scanned?
18      A   No, I do not.
19      Q   Do you know if it was scanned at every
20  step of the way or if it was only scanned once?  So,
21  for example, the first stamp is September 1st,
22  2011.  Do you know if it was scanned before these
23  other stamps were put on it?
24      A   I don't believe that it was, because I
25  don't recall seeing copies with -- without the

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 61

1  handwriting or without one or other of the stamps.
2  And generally speaking, a department that receives a
3  document that is not within their scope of duty
4  would not image the document.
5      Q    So for this one, at least, it looks like
6  it was scanned sometime after DOS received it, since
7  DOS' stamp is on it?
8          MR. KLOMP: Objection.  You're referring
9  to 27?
10         MS. EBRON: Twenty-seven.
11         MR. KLOMP: Okay.
12     A   Yes, it would have been.
13 BY MS. EBRON:
14     Q    And that would have been 12 days after it
15 was received by the first department in Lien
16 Release --
17     A   Yes, after it was received by lien
18 release.
19     Q    So is it possible that the notice of
20 trustee sale was received before the date of the
21 sale and it's not --
22         MR. KLOMP: Objection -- go ahead.
23 BY MS. EBRON:
24     Q    -- imaged until after?
25         MR. KLOMP: Objection:  Form.

Page 62

1      A   I mean, I would be speculating.  I don't
2  know.
3  BY MS. EBRON:
4      Q    Were there any servicing notes mentioning
5  the notice of trustee sale?
6          MR. KLOMP: Objection:  Scope.
7      A   I did not review the servicing notes in
8  the mortgage servicing platform.  But I believe
9  consistent with our responses to the
10 interrogatories, we did not receive notice prior to
11 the sale.
12 BY MS. EBRON:
13     Q    How do you know that?
14     A   Because if you look at the documents in
15 the imaging system, it's not there prior.  So if we
16 had received notice prior to just -- June 1st,
17 2015, if a document is received by us, it should be
18 in our imaging system prior to that date.  If it is
19 not received by us, I wouldn't expect to see it in
20 the imaging system until after June 1st, 2015, and
21 that's how we would gauge looking back in time, you
22 know, four years when we receive different
23 documents.
24     Q    Right.  I understand that, but a minute
25 ago, you testified that if a department received it,

Page 63

1  that wasn't supposed to do anything with it then
2  they would forward it; right?
3      A   Yes.
4      Q    And they wouldn't necessarily image it?
5      A   No, not necessarily.
6      Q    So it could have been in Wells Fargo's
7  possession, just not imaged into the system; right?
8      A   I mean, in theory, but I would -- I would
9  be speculating with regard to where it was sent, so
10 the -- Exhibit 18 doesn't have an envelope, and I
11 don't know if it was sent to Lien Release or if it
12 was sent to Wells Fargo Credit Card Services,
13 wherever.
14         I know that it's not in the imaging system
15 prior to the date of the sale.
16     Q    But you didn't check the servicing notes
17 to see if there was any mention of receipt of the
18 notice of sale?
19         MR. KLOMP: Objection:  Form.
20     A   No, I did not check the servicing notes,
21 but I reviewed our responses.
22 BY MS. EBRON:
23     Q    And somebody else looked at them?
24     A   I don't know that our responses indicated
25 that the servicing notes were reviewed, but, I mean,

Page 64

1  I would -- I would be speculating.
2      Q    Do you know who gave the factual
3  information to respond to the interrogatories?
4      A   Yes, Wells Fargo Law Department.
5      Q    Is there a specific person within the law
6  department that did that?
7      A   I don't know who specifically was assigned
8  to this case, but all the information is verified by
9  the person who does the verification before it's --
10 before we file our response.
11     Q    Okay.  So would the person who signed the
12 verification have looked at the servicing notes?
13     A   Yes.
14     Q    Does Wells Fargo dispute that the
15 homeowners association dues were delinquent for this
16 property?
17         MR. KLOMP: Objection:  Form.
18     A   I don't believe we're disputing that, but
19 I -- that's kind of outside of my scope.
20 BY MS. EBRON:
21     Q    Within the records that you reviewed, you
22 mentioned that there was contact with the borrower?
23     A   That we had?  Not -- not related to the
24 HOA, but we were in contact with the borrower.
25         THE WITNESS: And I'm sorry if I object --

Page 65

1 or if I --
2        MR. KLOMP: You're fine.  I was just going
3 to object to the form, but you nailed it so it
4 didn't matter.
5 BY MS. EBRON:
6    Q   Okay.  So do you know if the borrower ever
7 mentioned anything going on with the homeowners
8 association, like the delinquency or the
9 foreclosure?
10       MR. KLOMP: Objection:  Form.
11   A   There's nothing that I reviewed that was
12 communication from our borrower that included
13 anything at all about the HOA, except for the fact
14 that he had an HOA.
15 BY MS. EBRON:
16   Q   Was this borrower ever considered for a
17 loan modification?
18       MR. KLOMP: Objection:  Scope.
19   A   I don't believe -- well, so the
20 borrower -- this is confusing.  Sorry.
21       I did review documents from us that
22 indicated that we had assigned a single point of
23 contact to assist him with a loan modification
24 review.  I don't believe the borrower ever pursued
25 that, and so, technically, we had sent solicitations

Page 66

1 and even assigned someone to assist him with that
2 review.
3        The borrower was working on a short sale.
4 I don't believe he ever tried to get a loan
5 modification.
6 BY MS. EBRON:
7    Q   Okay.  So he wouldn't have filled out,
8 like, an RMA or...
9    A   So no.  I don't -- I did not see any
10 requests for mortgage assistance.
11       The short sale process at the time
12 required a hardship letter and documentation of
13 financials which we received, but there was
14 nothing -- I don't think I saw an RMA, and I don't
15 know that one would have been required during that
16 period of time.
17   Q   Do you know if the documentation for the
18 short sale required the borrower to provide
19 information about either the balance owed to the
20 association or the amount of the dues?
21   A   The borrower did provide a breakdown of
22 his monthly expenses, and I believe I recall seeing
23 that he had a breakdown of his housing expenses that
24 indicated that he had a $35 monthly HOA obligation.
25 Other than that, there was nothing that I reviewed.

Page 67

1        And I will just put a caveat on all of
2 this:  The documents outside of the documents that
3 are part of this production -- the only ones that I
4 reviewed were for a very limited period of time, and
5 so the only documents that I reviewed that are
6 unrelated to this that related to like, the short
7 sale are just from January 2012 to February 2013, so
8 within that period of time, he made no indication
9 that he had arrearages that were owed to the HOA
10 other than indicating on one or two monthly
11 financials that it was $35 -- I think it was $35 --
12 that he indicated that it was.
13   Q   When we were talking about Exhibits 16 and
14 18 earlier, you mentioned something about a
15 cancelation of -- receiving a cancelation?
16   A   Yes.
17   Q   What were you referring to?
18   A   So I believe we received -- so he had,
19 like, water -- delinquent water bills that liens
20 were recorded and then canceled, and I believe that
21 the notice of trustee sale -- they may have just
22 been postponing the sale, but I believe we have
23 notice that the sales are -- that the sales I guess
24 did not go forward, and I don't know if that's part
25 of these documents.

Page 68

1    Q   We have the release of notice of
2 delinquent assessment lien that we marked as
3 Exhibit 6.  That one's from 2008.  I didn't see any
4 others in your production or on the public records.
5    A   Okay.  This may -- this may be the only
6 one and then just the cancellations from -- I think
7 it was water.  It might have been trash or
8 something -- no.  I think it was water.  Those may
9 be the only other cancellations.
10   Q   Okay.  So I just wanted to make sure, you
11 know, if you had a document or a note or something
12 that showed that the notice of trustee's sale was
13 canceled, I would be interested to see that.
14   A   Yeah.  I may just be confused then, and we
15 may not have any of those.  Okay.  I hadn't seen
16 anything like that.  Yeah.  So maybe it was just
17 this one and then the -- the lien releases for --
18       MS. EBRON: I think they were -- but I
19 think they were called "cancellations."
20       (Discussion held off the record.)
21       MS. EBRON: Back on the record.
22 BY MS. EBRON:
23   Q   While we were off the record, we were able
24 to go through some of the documents.
25       Is it accurate to state that you're not

**30(b)(6) Stephanie Bradford - April 8, 2016**
**Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.**

---

Page 69

1 aware of any cancellations of the notices of sale
2 that were from the association?
3 **A   That's correct.**
4 Q   But there are a lot of lien releases and
5 cancellations but just not related to those notices
6 of sale; right?
7 **A   That's correct, not from the HOAs.**
8 Q   Does Fannie Mae have an interest in this
9 loan?
10 **A   No.**
11 Q   How do you know that?
12 **A   Because they don't.**
13 Q   Is there a certain business record that
14 you reviewed that tells you that Fannie Mae does not
15 have an interest?
16 **A   Well, I believe that was a specific**
17 **question in the requests for admissions, but it's**
18 **not -- it's not a Fannie.**
19 Q   Is this a Freddie Mac loan?
20 **A   No.**
21 Q   Is this loan FHA insured?
22 **A   No.**
23 Q   How much did Wells Fargo pay for its
24 interest in the loan?
25 **MR. KLOMP:** Objection:  Scope.

---

Page 70

1 **MS. EBRON:** It's --
2 **MR. KLOMP:** I know.
3 **MS. EBRON:** -- No. 4.
4 **MR. KLOMP:** I'm just logging my objection.
5 **MS. EBRON:** Okay.
6 **A   I don't know.**
7 BY MS. EBRON:
8 Q   Do you know -- do you recall when
9 Wells Fargo obtained its interest in the loan?
10 **A   I don't know.**
11 Q   And do you know through what type of
12 transaction Wells Fargo obtained its interest in the
13 loan?
14 **A   I don't know.**
15 Q   Do you know if Wells Fargo has more than
16 the servicing rights for this loan?
17 **A   I believe we do.  We do.  Actually, I**
18 **don't know.  I'm --**
19 Q   Okay.
20 **A   -- unclear at this point.**
21 Q   Did Wells Fargo participate in any civil
22 or administrative actions before the date of the
23 association foreclosure sale in relation to this
24 property?
25 **MR. KLOMP:** Objection to form.

---

Page 71

1 **A   Can you clarify?**
2 BY MS. EBRON:
3 Q   Did the -- or did Wells Fargo sue the
4 homeowners association about its lien on the
5 property before the date of the sale?
6 **A   No, we did not.**
7 Q   Did Wells Fargo file a complaint with the
8 Nevada Real Estate Division against the association
9 or Alessi & Koenig before the date of the
10 association foreclosure sale?
11 **A   No.**
12 Q   Did Wells Fargo make any payments to the
13 association in relation to this property?
14 **A   No.**
15 Q   Did Wells Fargo ever make any payments to
16 Alessi & Koenig, LLC, in relation to this property?
17 **A   No.**
18 Q   Did Wells Fargo ever try to make a payment
19 that wasn't accepted by the association or Alessi in
20 relation to this property?
21 **A   No.**
22 Q   And I may have already asked this, but I'm
23 not sure:  Did Wells Fargo attend the association
24 foreclosure sale?
25 **A   You did ask.  No, we did not.**

---

Page 72

1 Q   I don't remember if it was in one of the
2 other depos yesterday or today.
3 Is there a pooling and servicing agreement
4 applicable to this loan?
5 **A   No.**
6 Q   Are there servicing guidelines applicable
7 to this loan?
8 **A   Yes.**
9 Q   Do any of those servicing guidelines
10 mention -- or are they applicable to associations,
11 association liens, or association foreclosures?
12 **A   I don't know.**
13 **And when I say there's servicing**
14 **guidelines, there's even Wells-owned properties have**
15 **servicing guidelines, so even if they're part of our**
16 **own portfolio, we still have servicing guidelines**
17 **that we look to just as if it were owned by Fannie**
18 **or subject to PSA.**
19 Q   Thank you.  Were there any practices
20 policies, procedures, applicable to the property for
21 handling association liens for the time period
22 beginning from the date of origination to the date
23 of the association foreclosure sale?
24 **MR. KLOMP:** I'll just lodge an a limited
25 objection to the time Wells Fargo was not the named

---

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 21 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 73

1  holder or beneficial interest holder.
2    **A   I don't know.**
3  BY MR. EBRON:
4    Q   Do you know the factual basis for the
5  allegation that the first deed of trust was not
6  extinguished by the association foreclosure sale?
7        MR. KLOMP: Objection: Form.
8    **A   Do I know the factual basis?**
9  BY MS. EBRON:
10   Q   Yes.
11   **A   Yes.  We had a first mortgage lien on the**
12  **property, and we were not aware that there was a**
13  **foreclosure sale, having not received notice.  And,**
14  **also, not knowing that the Nevada courts would**
15  **interpret or provide a remedy for HOAs to have a**
16  **super-priority lien, we -- it's our position that --**
17  **I mean, I'm not even sure this is really my role, to**
18  **lay out our legal position, but, no, we have a first**
19  **mortgage lien; we have not been paid; and it's our**
20  **position that the HOA sale didn't provide us notice,**
21  **and it was -- I think it was for, like, $6,300, and**
22  **our total at the time was for, like, $400,000.**
23  BY MS. EBRON:
24   Q   Anything else?
25   **A   No.**

Page 74

1    Q   Does Wells Fargo dispute that the notice
2  of delinquent assessments lien document was mailed
3  to the borrower?
4    **A   I don't know if they're disputing or not.**
5  **I don't know we would have standing to say whether**
6  **he received or was mailed anything.  I don't know.**
7    Q   So there's not anything within
8  Wells Fargo's business records that discuss whether
9  or not the borrower received a notice of delinquent
10  assessments?
11   **A   I don't believe so.  I did not see**
12  **anything that indicated that he had put us on notice**
13  **or that he had -- whether that's sufficient or not,**
14  **but I -- I don't -- I did not see anything that he**
15  **had advised us that there was delinquent**
16  **assessments -- that there were delinquent**
17  **assessments.**
18   Q   Does Wells Fargo dispute that the notice
19  of default with the homeowners association was
20  posted on the property?
21        MR. KLOMP: Objection:  Scope.
22   **A   I don't know.**
23  BY MS. EBRON:
24   Q   Does Wells Fargo dispute that the notice
25  of sale at issue, the second notice of sale that we

Page 75

1  looked at in Exhibit 18, was posted on the property?
2    **A   I don't know.**
3    Q   Does Wells Fargo dispute that the notice
4  of sale was mailed to the borrower?
5        MR. KLOMP: Objection:  Scope.
6    **A   I don't know.  You're asking if we're**
7  **disputing any of this.  I don't know.**
8  BY MS. EBRON:
9    Q   Yeah, or if you have any knowledge about
10  that.
11   **A   I have no knowledge about that, but I also**
12  **don't know if we're disputing that.  I don't think**
13  **that we think that's material whether or not he**
14  **received notice.  We didn't receive notice, so...**
15   Q   But you did receive the notice of default,
16  though; right?
17   **A   We received a notice of default, yes.**
18   Q   What would have happened if the notice of
19  sale in Exhibit 18 was received before the
20  association foreclosure sale --
21        MR. KLOMP: Objection.
22        MS. EBRON: Sorry.
23        MR. KLOMP: Go ahead.
24  BY MS. EBRON:
25   Q   Do you know if there would have been any

Page 76

1  action taken by Wells Fargo?
2        MR. KLOMP: Objection:  Form and scope.
3    **A   Well, since we didn't receive it prior to**
4  **the sale, I'm speculating as to what would have**
5  **happened and if we could have saw into the future to**
6  **see how the Court was going to rule with regard to**
7  **the HOA loans then.**
8        **Our practice is to protect our interest in**
9  **the property, so how do we receive timely notice?**
10  **How do we foresee how the Court was going to rule**
11  **then -- with regard to the HOAs and their ability to**
12  **obtain a super-priority lien, then we would have**
13  **paid it.**
14        **So our process would have hinged on a**
15  **number of variables that just didn't exist at the**
16  **time.**
17  BY MS. EBRON:
18   Q   So are you saying that if it was received
19  before because, you did not know that the Nevada
20  Supreme Court would have interpreted the statute the
21  way that it is, then it still would not have been
22  paid?
23        MR. KLOMP: Objection:  Form.
24   **A   No.  If -- I mean, now -- now that we have**
25  **seen how the interpretation is affecting our liens,**

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 22 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 77

1 then if this were to happen today, then we would
2 attend the sale. But, I mean, there was no way for
3 us to know then.
4 BY MS. EBRON:
5    Q   Right. So before September of 2014,
6 before the Nevada Supreme Court came down with its
7 decision in SFR to U.S. Bank, Wells Fargo would have
8 been operating under the same belief that it did
9 when it received its notice of default; right?
10    MR. KLOMP: Objection: Form.
11    A   I believe so. But I will say it's a
12 case-by-case basis whether or not we make payments
13 in other states that don't have this interpretation
14 of the law, and in other -- so in other states and
15 in other situations, it's a case-by-case basis
16 whether we're going to pay an HOA lien or any other
17 lien on the property, so I would assume that it
18 would have went to -- had we received this prior to
19 the sale date, it would have went to the appropriate
20 department to review it to determine what steps we
21 were going to take, if any.
22 BY MS. EBRON:
23    Q   What department would that be?
24    A   I believe that it's called -- well, it's
25 in servicing. It's not corporate trust. I don't

Page 78

1 know the name of the exact department, but it's
2 default servicing.
3    Q   You reviewed the responses to
4 interrogatories; right?
5    A   I did.
6    Q   In Interrogatory No. 4, it asks to
7 describe any action you took relating to the
8 association lien, if any, after receiving notice
9 that the association was enforcing its lien against
10 the property.
11    And then the response -- there were some
12 objections about duty to do that, and then without
13 waiving any objections, Wells Fargo responds that
14 its policy is to pay off the association lien from
15 proceeds of its own foreclosure sale.
16    Does that sound accurate to you?
17    A   That is. That is -- is that a policy, or
18 is that a -- what are you asking?
19    Q   Does that response sound accurate to what
20 actions did you take after receiving a notice?
21    A   I guess my trouble in responding to that
22 is I don't know we ever had -- that our sale ever
23 occurred. But, generally speaking, if we receive
24 notice of an HOA foreclosure sale, if we determine
25 not to pay or attend -- if we determine not to pay

Page 79

1 it, bring it current, and we determine not to attend
2 the sale, then, yes, if we are in foreclosure also
3 and we -- and our foreclosure sale occurs, then,
4 yes, we can pay off the foreclosure lien after, with
5 the proceeds from our own sale, if it occurs at a
6 later date.
7    I just don't -- I don't know this ever did
8 go to foreclosure and that response -- I guess the
9 question is what did we do after we received it.
10    Q   Yes.
11    A   And then the response is saying what we
12 would do if we had had a sale.
13    MS. EBRON: Well, it didn't say what you
14 would do if you had a sale.
15    Let's go ahead and mark the responses as
16 Exhibit 28.
17    (Deposition Exhibit 28 was marked for
18    identification.)
19    MS. EBRON: Here's a copy for you,
20 Counsel.
21 BY MS. EBRON:
22    Q   So it's Page 3.
23    A   Okay. I agree that we do have a practice
24 of paying off association liens with proceeds from
25 our foreclosure sales. In certain situations, yes.

Page 80

1    Q   Okay. So in this case, the action was --
2 was to wait? Is that right? I'm not sure I'm
3 understanding the response to the interrogatory.
4    A   So the interrogatory is asking what --
5 what did we do after we received notice that the
6 association was enforcing its lien against the
7 property. And the response is saying that our
8 policy is to pay off the HOA lien with proceeds from
9 our foreclosure sale. That is a true statement.
10    I think you just sup- -- I would
11 supplement that response and say that after
12 receiving the notice, we -- we didn't take any steps
13 after receiving the notice because we didn't get to
14 the point that we were going to take the steps that
15 we usually do, which would be to pay it off after
16 our own foreclosure sale.
17    Q   So if the notice of sale had been logged
18 and had gotten to the right department and
19 Wells Fargo knew about the sale, the association
20 foreclosure sale, before January 9th, 2013, would
21 its actions still have reason to wait and pay the
22 association lien from its own foreclosure sale
23 proceeds?
24    MR. KLOMP: Objection. Form.
25    A   It could have been. We could have paid

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 81

1 it. So there -- we -- there have been instances
2 where we pay the liens without going to foreclosure
3 sale, so there would be a review, and there would be
4 a determination of what we would do.
5 BY MS. EBRON:
6    Q   Do you know if that review would have been
7 documented in any way? So, for example, was there a
8 review of the notice of default?
9    A   I don't know. It would be memorialized in
10 the mortgage servicing platform, so within the
11 servicing notes, perhaps also in the foreclosure
12 notes within MSP. If there was a review, it would
13 be memorialized in one of those two places.
14    Q   Was there -- or are there any servicing
15 notes indicating that there was a review of the
16 notice of sale marked as Exhibit 18?
17       MR. KLOMP: Objection: Scope.
18    A   I don't know. I didn't review the
19 servicing notes.
20 BY MS. EBRON:
21    Q   Does Wells Fargo have a factual basis for
22 any allegation that the circumstances surrounding
23 the association foreclosure sale constitute fraud,
24 oppression, or unfairness?
25       MR. KLOMP: Objection: Form.

Page 82

1    A   I believe we responded "No" on that one.
2       What question are you on the
3 interrogatories?
4 BY MS. EBRON:
5    Q   On Topic 25. Sorry. It's not a
6 interrogatory.
7    A   Oh.
8    Q   Well, it may be, but I was just asking
9 about Topic 25.
10    A   I think it is, actually, on -- I think
11 it's in the requests for admissions, and I think we
12 responded "No," but I think there was a general
13 reservation that if we -- the discovery was ongoing
14 and we would supplement later, but I believe we
15 responded that we don't have any -- we don't have a
16 position at this point that there's any fraud.
17    Q   Thank you.
18       Does Wells Fargo have any information
19 about the relationship between SFR Investments
20 Pool 1, LLC, and the association beyond what it
21 knows from the Trustee's Deed Upon Sale?
22    A   I don't believe so, no. I haven't seen
23 anything.
24    Q   Does Wells Fargo have any information
25 about the relationship of SFR Investments Pool 1,

Page 83

1 LLC, and Alessi & Koenig, LLC?
2    A   I have not seen anything.
3    Q   Is there anything within Wells Fargo's
4 business records that suggests that SFR Investments
5 Pool 1, LLC, colluded with anyone to -- in relation
6 to the sale?
7    A   Can you rephrase?
8    Q   Does Wells Fargo have any evidence that
9 SFR Investments Pool 1, LLC, colluded with another
10 person or entity in relation to the association
11 foreclosure sale?
12       MR. KLOMP: Objection: Form.
13    A   I don't know.
14 BY MS. EBRON:
15    Q   Okay. You know, sometimes the borrowers
16 in these cases, though -- they'll call up the lender
17 and say this and this and this is going on with the
18 association, "They're foreclosing on my property,"
19 and they give information.
20       I'm just wondering if there's anything
21 like that in Wells Fargo's files for this property.
22    A   Our borrower didn't tell us anything about
23 the HOA foreclosure sale. My hesitation was just
24 with regard to our opinion of the sale.
25    Q   Right. Okay.

Page 84

1       And I know you mentioned some things about
2 not receiving notice. Do you have any information
3 or position on whether or not SFR Investments Pool
4 1, LLC, knew whether or not Wells Fargo had notice
5 of the sale?
6       MR. KLOMP: Objection: Form.
7    A   You're asking me if Wells Fargo knew that
8 your client knew we had notice?
9 BY MS. EBRON:
10    Q   Is there anything in your file that would
11 give you any knowledge of what SFR knew at the time
12 that it purchased the sale -- purchased the property
13 at the sale?
14       MR. KLOMP: Objection. Form.
15    A   No. I mean, I don't know what your client
16 was thinking.
17 BY MS. EBRON:
18    Q   In your review of the file, did you see
19 any valuations of the property?
20    A   I did.
21    Q   How many?
22    A   I may have seen two, but it may have been
23 a duplicate. I've seen at least one valuation, but
24 it is a couple years -- I think it's a couple years
25 before the sale, before the HOA foreclosure sale.

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 85

1    Q   Do you remember how much it was for?
2    A   I believe it was for 120, 120,000.
3    Q   And do you know the purpose of that
4  valuation?
5    A   I don't -- it may have been a dual
6  purpose, both for foreclosure and also short sale
7  review.  I don't recall if it was specifically for
8  short sale or foreclosure.  I'm assuming that it was
9  dual.
10   Q   And do you know if there was an appraisal
11 done when the loan was originated?
12   A   I would assume that there was, but I don't
13 actually recall seeing one.  But I specifically -- I
14 wasn't specifically looking for one.
15   Q   Fair enough.
16       Did Wells Fargo ever obtain a trustee's
17 sale guarantee for this loan?
18   A   I don't know if we did.
19   Q   Does Wells Fargo maintain documents that
20 it receives from the trustee, so National Default
21 Servicing Corporation?
22   A   Yes.
23   Q   Did you review any of those documents in
24 preparation for your deposition?
25       MR. KLOMP: Objection:  Scope.

Page 86

1    A   So I think that there -- I think that the
2  only documents that I've seen from them are part of
3  this production.  I don't believe there was anything
4  within the year's time span that I was looking.  I
5  don't think there was anything from them in our
6  imaging system, and that may have predated when we
7  were working with them.
8  BY MS. EBRON:
9    Q   Do you know if there's a title policy for
10 this loan?
11   A   I don't know.
12   Q   In your review of the file, did you see
13 any internal communications that mentions the
14 association lien, delinquent association assessment,
15 or association foreclosure as it relates to the
16 property?
17   A   No.
18   Q   Where would you look to see that
19 information?
20   A   In the servicing process notes or in the
21 foreclosure notes.
22   Q   But you didn't review those before your
23 deposition today; right?
24   A   I didn't.
25   Q   So you don't know if there are any

Page 87

1  internal communications that mentions the
2  association lien, delinquent association
3  assessments, or association foreclosure as it
4  relates to the property?
5    A   No.
6    Q   Besides the documents we've already talked
7  about, did you see any documents or communications
8  between Wells Fargo and the association?
9    A   No.
10   Q   What about between Wells Fargo and Alessi?
11   A   No.
12       MS. EBRON: Those are all the questions
13 that I have.
14       Counsel, do you have any questions?
15       MS. JEONG: My questions are really
16 simple.
17           EXAMINATION
18 BY MS. JEONG:
19   Q   We saw on some of the exhibits the MIN
20 number.  What does that stand for?
21   A   I don't know.
22   Q   And on Exhibit 27 --
23   A   And, actually, I don't recall, because --
24 I don't know.
25   Q   Oh, okay.

Page 88

1        On Exhibit 27, on the first page, we saw
2  the letters "VS."  You said it was vendor something.
3  I couldn't --
4    A   I think it's vendor scape or vendor scope,
5  so it's a -- it's a platform that we use to
6  communicate with vendors on accounts that are in
7  default, and it's vendor scape or vendor scope.  I'm
8  not sure which one it is.  It's not called that
9  anymore.
10   Q   Okay.  And what are some of the vendors --
11 like what are some of the examples of the vendors
12 that you would use?
13   A   So we would communicate with, like, our
14 property preservation vendors through what was
15 called "vendor scope," at the time or "scape"; our
16 trustees; I believe our communication through our
17 counsel was also done through there.
18       Those are just vendors.
19   Q   Okay.
20   A   I don't know anyone besides those three
21 groups.
22       MS. JEONG: That's all I have.
23       MR. KLOMP: Thanks.
24       THE REPORTER: Ms. Jeong, your request was
25 for an electronic copy.

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

Page 89

1      **MS. JEONG:** Yes.
2      **THE REPORTER:** Mr. Klomp, yours will be
3  whatever is standard for your office?
4      **MR. KLOMP:** Electronic is fine.
5      **THE REPORTER:** Thank you.
6      (Proceedings concluded at 3:24 p.m.)
7              -oOo-
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 90

1  STATE OF NEVADA  )
   COUNTY OF CLARK  )
2
3          CERTIFICATE OF REPORTER
4      I, Andrea N. Martin, a duly commissioned and
5  licensed court reporter, Clark County, State of
6  Nevada, do hereby certify:
7      That I reported the taking of the deposition of
8  Stephanie Bradford, commencing on Friday, April 8,
9  2016, at the hour of 1:17 p.m.; that the witness
10  was, by me, duly sworn to testify to the truth and
11  that I thereafter transcribed my said shorthand
12  notes into typewriting, and that the typewritten
13  transcript of said deposition is a complete, true,
14  and accurate transcription of said shorthand notes;
15  that I am not a relative or employee of any of the
16  parties involved in said action, nor a relative or
17  employee of an attorney involved in nor a person
18  financially interested in said action; further, that
19  the reading and signing of the transcript was
20  waived.
21      IN WITNESS WHEREOF, I have hereunto set my hand
22  in my office in the County of Clark, State of
23  Nevada, this 18th day of April, 2016.
24      _____
25              ANDREA N. MARTIN, CRR, CCR NO. 887

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 26 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

**$**

**$35 (3)**
66:24;67:11,11
**$400,000 (1)**
73:22
**$6,300 (1)**
73:21

**A**

**Abelson (1)**
14:22
**Abelson's (1)**
17:1
**ability (1)**
76:11
**able (2)**
22:5;68:23
**above (1)**
33:6
**accepted (1)**
71:19
**access (1)**
25:3
**account (2)**
25:3;52:4
**accounts (5)**
11:8;25;12:8;52:12;88:6
**accurate (4)**
54:5;68:25;78:16,19
**accused (1)**
9:3
**acquired (1)**
17:20
**across (1)**
15:1
**acting (1)**
19:21
**action (9)**
57:22;58:2,4,7,10,16;76:1;
78:7;80:1
**actions (3)**
70:22;78:20;80:21
**actual (1)**
54:18
**actually (12)**
9:25;12:9;18:4,15;45:6;
48:22;54:22;60:4;70:17;
82:10;85:13;87:23
**addition (1)**
13:16
**additional (1)**
22:25
**address (6)**
6:22;42:25;43:7;53:2,21,24
**administrative (1)**

70:22
**admissions (3)**
24:23;69:17;82:11
**advise (2)**
16:1;29:11
**advised (1)**
74:15
**affecting (1)**
76:25
**affidavit (2)**
42:18;43:14
**afternoon (1)**
6:11
**again (1)**
53:25
**against (3)**
71:8;78:9;80:6
**ago (1)**
62:25
**agree (2)**
57:7;79:23
**agreement (1)**
72:3
**ahead (5)**
18:11,21;61:22;75:23;
79:15
**Alessi (11)**
13:19;14:2,3;54:15,24;
58:22;71:9,16,19;83:1;87:10
**allegation (2)**
73:5;81:22
**allonge (3)**
16:9,11,13
**allonges (1)**
16:7
**amount (2)**
24:8;66:20
**amounts (3)**
20:13;22:23;36:10
**analyst (4)**
7:2,10;11:7,20
**anticipate (1)**
29:14
**anymore (1)**
88:9
**appearances (3)**
11:12,15,18
**appears (3)**
15:10;43:18;53:4
**applicable (4)**
72:4,6,10,20
**appraisal (2)**
45:23;85:10
**appropriate (1)**
77:19
**approving (1)**
24:9
**approximate (1)**

17:21
**April (2)**
6:1;8:17
**area (1)**
8:5
**armed (1)**
45:1
**around (2)**
26:12;54:7
**arrearages (1)**
67:9
**aside (1)**
54:25
**as-is (1)**
48:25
**assessment (5)**
25:24;30:16,22;68:2;86:14
**assessments (9)**
20:14;22:2,21;26:9;74:2,10,
16,17;87:3
**assigned (3)**
64:7;65:22;66:1
**assignment (6)**
32:10,21,25;33:5;44:2;54:1
**assignments (2)**
11:15;44:6
**assigns (1)**
19:22
**assist (2)**
65:23;66:1
**assistance (1)**
66:10
**Assistant (2)**
8:22,25
**associate (1)**
9:9
**Association (60)**
8:13,16,21;9:14,17;13:11,
11,12,14,17,20,23;21:4;22:3;
24:8;26:15;34:1,14;36:21;
47:25;51:1;56:9;58:19;59:2;
64:15;65:8;66:20;69:2;70:23;
71:4,8,10,13,19,23;72:11,11,
21,23;73:6;74:19;75:20;78:8,
9,14;79:24;80:6,19,22;81:23;
82:20;83:10,18;86:14,14,15;
87:2,2,3,8
**associations (1)**
72:10
**assume (4)**
52:7;53:22;77:17;85:12
**assuming (1)**
85:8
**attached (1)**
16:11
**attachment (1)**
15:4
**attain (1)**

20:15
**attempting (1)**
31:1
**attend (8)**
9:19;10:7;59:11,15;71:23;
77:2;78:25;79:1
**attending (1)**
11:11
**attorney (2)**
9:9,10
**atypical (1)**
49:16
**auction (1)**
13:18
**August (3)**
8:17;9:23;56:8
**authority (2)**
42:18;43:14
**aware (2)**
69:1;73:12

**B**

**back (5)**
32:18;33:14;47:16;62:21;
68:21
**balance (2)**
12:8;66:19
**bank (4)**
10:15,17;12:21;77:7
**Bankruptcy (3)**
7:13;11:23,25
**bargain (3)**
23:10,22,25
**based (1)**
11:15
**basis (5)**
73:4,8;77:12,15;81:21
**Bates (12)**
19:18;20:9;21:13;22:19;
27:24;36:9;42:7,17;43:23;
48:23;52:13;57:16
**Bay (4)**
13:4,8;14:22;47:5
**bear (1)**
60:11
**became (3)**
17:22;28:5;42:10
**become (2)**
22:25;36:10
**beginning (1)**
72:22
**behalf (7)**
13:20;14:11;29:2;36:5;
42:14;46:17;48:15
**belief (1)**
77:8
**beneath (1)**

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 27 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

51:22

**beneficial (1)**
73:1

**beneficiary (3)**
19:15,23;43:7

**benefits (1)**
47:1

**besides (8)**
7:10;9:6;10:12;11:20;16:5;
44:13;87:6;88:20

**beyond (2)**
58:1;82:20

**bills (1)**
67:19

**blurry (1)**
53:20

**Borrower (29)**
20:10;22:1,6,12,20,25;24:2,
9;27:20;44:24;45:1,4,15;59:1,
4;64:22,24;65:6,12,16,20,24;
66:3,18,21;74:3,9;75:4;83:22

**borrowers (2)**
12:5;83:15

**borrower's (2)**
33:1;47:5

**both (1)**
85:6

**bottom (1)**
27:25

**BRADFORD (2)**
6:4,16

**B-R-A-D-F-O-R-D (1)**
6:17

**breach (1)**
28:1

**break (2)**
8:9;18:24

**breakdown (2)**
66:21,23

**bring (3)**
11:10;18:18;79:1

**business (26)**
6:22;23:13;24:5;26:2,5;
30:4,19;35:13;36:24;37:11,
25;38:14;39:3,15;40:25;41:3;
42:25;43:7;50:7,10,14;51:4;
52:18;69:13;74:8;83:4

## C

**California (1)**
47:21

**call (2)**
19:1;83:16

**called (4)**
68:19;77:24;88:8,15

**came (9)**
31:2;50:9,14;52:16,24;

56:18,18,21;77:6

**Can (44)**
6:14;13:2;14:17;16:18;
18:11,13;20:14;21:13;22:9;
23:6,18;25:10,17;26:21;
28:16;29:20;30:9;32:4;33:4,
11,13;35:4,19;36:16;37:4,16;
38:5,19;39:8,20;40:15;41:8,
21;44:12;46:4;48:6;49:24;
50:19;53:15;55:14;56:12;
71:1;79:4;83:7

**cancelation (4)**
58:5,14;67:15,15

**canceled (2)**
67:20;68:13

**cancellations (5)**
68:6,9,19;69:1,5

**Card (1)**
63:12

**case (7)**
15:2;24:1,21;31:23;33:19;
64:8;80:1

**case-by-case (2)**
77:12,15

**caseload (1)**
11:13

**cases (3)**
11:10,16;83:16

**caused (1)**
29:2

**caveat (1)**
67:1

**CC&Rs (2)**
34:14,21

**certain (4)**
8:4;52:6;69:13;79:25

**Certificate (1)**
46:10

**certifications (1)**
11:4

**chance (2)**
12:24;14:7

**Charles (1)**
40:5

**check (3)**
57:10;63:16,20

**circumstances (1)**
81:22

**city (1)**
6:24

**civil (1)**
70:21

**claim (3)**
35:10;39:11;45:10

**claims (2)**
44:11,14

**clarify (1)**
71:1

**Clark (22)**
23:23;25:24;27:4;28:24;
30:2,17;32:11;35:12;36:2,22;
37:23;38:12;39:1,13;40:2,22;
41:14;42:4;46:11;48:13;
50:12;51:2

**clear (1)**
14:25

**clearly (1)**
22:7

**client (1)**
84:8,15

**Cline (1)**
6:11

**code (1)**
53:18

**codes (2)**
53:15,16

**colluded (2)**
83:5,9

**communicate (2)**
88:6,13

**communicated (1)**
29:13

**communication (2)**
65:12;88:16

**communications (3)**
86:13;87:1,7

**community (1)**
21:22

**compare (1)**
33:14

**complaint (1)**
71:7

**Complies (1)**
32:6

**computer (1)**
25:2

**concluded (1)**
89:6

**condition (1)**
48:25

**confused (1)**
68:14

**confusing (1)**
65:20

**considered (5)**
24:8,12,12;34:11;65:16

**consistent (1)**
62:9

**constitute (1)**
81:23

**contact (8)**
58:18,22;59:1,4,7;64:22,24;
65:23

**contained (14)**
23:12;24:4;26:1;30:3,18;
36:23;37:10,24;38:13;39:2,

14;40:24;50:6;51:3

**containing (1)**
54:5

**contains (1)**
22:14

**copies (1)**
60:25

**copy (16)**
14:23;15:3,7,11,13;30:22;
34:13,21;54:10,23;55:20,24;
60:8,9;79:19;88:25

**corporate (1)**
77:25

**corporation (10)**
19:20;27:12;29:2;36:5;
40:6,8;42:14;46:17;48:15;
85:21

**correlates (1)**
52:8

**corresponds (1)**
14:21

**counsel (6)**
11:9,9;25:8;79:20;87:14;
88:17

**country (1)**
8:5

**county (23)**
9:4;23:23;25:24;27:4;
28:24;30:2,17;32:11;35:12;
36:2,22;37:23;38:12;39:1,13;
40:2,22;41:14;42:4;46:11;
48:13;50:13;51:2

**couple (2)**
59:25;84:24,24

**court (6)**
6:5;11:12;76:6,10,20;77:6

**courts (1)**
73:14

**covenant (1)**
49:1

**Credit (1)**
63:12

**crimes (1)**
9:3

**criminal (1)**
9:12

**current (3)**
42:25;43:7;79:1

## D

**date (35)**
13:22;15:2;17:19,20;24:19;
26:6,17;30:24;31:2,5,7,21;
32:22;47:23,25;48:18;50:13;
51:19;55:2;56:18,21;60:3,4,
12,16;61:20;62:18;63:15;
70:22;71:5,9;72:22,22;77:19;

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 28 of 40
**30(b)(6) Stephanie Bradford - April 8, 2016**
**Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.**

79:6
**dates (3)**
8:15;9:21;26:8
**day (2)**
20:11;56:8
**days (2)**
59:25;61:14
**deals (1)**
11:19
**debt (1)**
22:25
**December (1)**
26:13
**decision (1)**
77:7
**declaration (1)**
34:14
**deed (32)**
16:10,24;17:2;19:12,17;
21:17,20;23:10,23;24:1;27:3,
7;28:23;32:10,21,25;33:5,16;
34:6;36:1;40:21;41:13;42:3,
21;43:1,8;44:6;46:13;54:1;
55:4;73:5;82:21
**default (45)**
7:14,14;12:7,7,9;27:2,6,11,
21;28:23;29:1,5;32:23,24;
35:25;36:4,5,8,20;40:6,8;
41:12,15;42:2,8,14;45:4;
46:17;48:15;50:25;52:12;
54:6,17;56:5,25;57:23;60:17;
74:19;75:15,17;77:9;78:2;
81:8;85:20;88:7
**defendant (1)**
42:9
**Defender (7)**
8:13,16,20,22;9:1,14,16
**defense (1)**
9:12
**defines (1)**
13:10
**definitions (1)**
13:3
**degree (2)**
10:1,4
**delinquency (1)**
65:8
**delinquent (14)**
25:23;26:9;30:16,22;33:1;
64:15;67:19;68:2;74:2,9,15,
16;86:14;87:2
**department (12)**
51:11,20;56:16;61:2,15;
62:25;64:4,6;77:20,23;78:1;
80:18
**departments (1)**
56:13;57:1;58:1;60:12
**depos (1)**

72:2
**deposition (34)**
7:17,22;12:11,20;14:14;
16:15;23:3,15;24:16;25:14;
26:18;28:13;29:17;30:6;32:1;
35:1,16;36:13;37:1,13;38:2,
16;39:5,17;40:12;41:5,18;
46:1;48:3;49:21;50:16;79:17;
85:24;86:23
**depositions (2)**
8:3;11:12
**Des (2)**
51:17;54:9
**describe (2)**
53:13;78:7
**described (1)**
20:5
**designated (1)**
14:11
**determination (1)**
81:4
**determine (5)**
49:14;77:20;78:24,25;79:1
**development (4)**
21:18,20;22:1,16
**Diana (1)**
6:11
**differences (1)**
49:14
**different (4)**
57:13;58:1;60:12;62:22
**disbursed (1)**
22:24
**discovery (2)**
11:11;82:13
**discuss (1)**
74:8
**discussing (1)**
17:1
**discussion (2)**
55:16;68:20
**dispute (5)**
64:14;74:1,18,24;75:3
**disputing (4)**
64:18;74:4;75:7,12
**Division (2)**
59:8;71:8
**document (51)**
12:14,17;14:18;15:2;16:21;
18:4;19:14;23:7,21;25:20;
26:24;28:19;29:23;30:12;
31:1,17;32:7;33:11,13;35:7,
22;36:17;37:19;38:5,8,22;
39:9,23;40:4,18;41:9,24;46:7;
48:9;50:2,19,22;51:21;52:15,
22,24;56:15,15;57:5,8;60:13;
61:3,4;62:17;68:11;74:2
**documentation (2)**

66:12,17
**documented (1)**
81:7
**documents (34)**
18:12,17,19,22;19:5;24:15,
18,20,21;25:5,11;30:23;
31:10,14,19,21,23;40:10;
47:20;56:12;57:16;62:14,23;
65:21;67:2,2,5,25;68:24;
85:19,23;86:2;87:6,7
**done (3)**
33:1;85:11;88:17
**DOS (7)**
51:7,8,9,9;54:10;56:18;61:6
**DOS' (1)**
61:7
**down (1)**
77:6
**drawing (1)**
10:14
**Drive (1)**
13:4
**DSM (3)**
51:13,17,17
**dual (2)**
85:5,9
**due (8)**
20:11,13;22:21;28:5,8,9;
36:10;42:10
**dues (5)**
21:3;22:20;24:9;64:15;
66:20
**Duke (2)**
9:20,22
**duly (1)**
6:5
**duplicate (2)**
60:9;84:23
**During (2)**
56:7;66:15
**duties (5)**
8:25;11:6,22,23;12:6
**duty (2)**
61:3;78:12

**E**

**earlier (2)**
31:3;67:14
**EBRON (89)**
6:10,11;12:13;14:16;16:17;
18:20;19:8;9;21:12,24;22:10;
23:5,17;24:14;25:16;26:20;
27:10;28:15;29:19;30:8;32:3;
33:23;34:12,19;35:3,18;
36:15;37:3,7,9,15;38:4,18;
39:7,19;40:14;41:7,20;43:22;
45:14,20;46:3;47:11;48:5;

49:9,23;50:18;55:14,21;
56:23;61:10,13,23;62:3,12;
63:22;64:20;65:5,15;66:6;
68:18,21,22;70:1,3,5,7;71:2;
73:3,9,23;74:23;75:8,22,24;
76:17;77:4,22;79:13,19,21;
81:5,20;82:4;83:14;84:9,17;
86:8;87:12
**either (6)**
44:7;45:21;54:20;59:23;
60:1;66:19
**election (2)**
27:2;28:23;35:25;36:20;
41:13;42:2;50:25;54:17
**Electronic (12)**
19:11,19;88:25;89:4
**else (7)**
9:5;11:1;24:24;44:18;
45:24;63:23;73:24
**employed (4)**
6:18;7:3,5;9:13
**employer (1)**
6:20
**employment (2)**
8:15;9:18
**encumbrance (1)**
20:16
**encumbrances (1)**
49:2
**end (1)**
56:22
**endorsements (1)**
16:5
**enforcing (2)**
78:9;80:6
**enough (1)**
85:15
**ensure (1)**
44:23
**entitled (1)**
47:1
**entity (3)**
44:10,13;83:10
**envelope (12)**
52:15,24;54:5,15,18;55:6,7,
8,19,22;60:14;63:10
**envelopes (1)**
55:1
**Escrow (2)**
20:10,22

**'**

**'Escrow (1)**
20:4

**E**

Case 2:15-cv-00796-APG-DJA Document 66-5 Filed 05/19/16 Page 29 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

**escrowed (4)**
20:20,24;21:4,10
**Estate (2)**
59:8;71:8
**even (5)**
34:10;66:1;72:14,15;73:17
**evidence (1)**
83:8
**exact (1)**
78:1
**exactly (3)**
32:20;52:6;60:8
**EXAMINATION (2)**
6:9;87:17
**examined (1)**
6:7
**example (2)**
60:21;81:7
**examples (1)**
88:11
**except (1)**
65:13
**exemption (1)**
46:23
**exercise (1)**
42:19
**Exhibit (83)**
12:11,15;14:14,18;16:15,
19;17:4;23:3,7,15,19;25:14,
18;26:18,22;27:7;28:13,17;
29:17,21;30:6,10;32:1,5;
33:15;35:1,5,16,20;36:13,17;
37:1,5,10,13,17;38:2,6,16,20;
39:5,8,17,21;40:12,16;41:5,9,
18,22;42:22;44:2;46:1,5,14;
48:3,7;49:21,25;50:16,20;
54:20,20;55:1,9,17;57:1,13,
24;58:10,15;60:11,11,17;
63:10;68:3;75:1,19;79:16,17;
81:16;87:22;88:1
**exhibits (4)**
57:21;58:6;67:13;87:19
**exist (1)**
76:15
**exists (1)**
14:24
**expect (1)**
62:19
**expenses (2)**
66:22,23
**experience (2)**
10:11,14
**express (1)**
49:1
**extinguished (1)**
73:6

## F

**fact (1)**
65:13
**factor (2)**
24:13;34:10
**factual (4)**
64:2;73:4,8;81:21
**failure (1)**
36:9
**Fair (1)**
85:15
**familiar (1)**
7:21
**family (1)**
9:12
**Fannie (4)**
69:8,14,18;72:17
**Fargo (80)**
6:21;7:1,4,5,10;8:7,10,12;
10:13;12:21;14:10;15:5;
17:10,13,22,24;25:9;27:17;
29:3;30:21;32:14,15;33:24;
34:13;36:6;42:15;43:2,8,12,
15;44:13;46:18;48:16;51:11;
53:15;56:2;57:2,17,22;58:2,
11,16,18,22;59:1,7,11;63:12;
64:4,14;69:23;70:9,12,15,21;
71:3,7,12,15,18,23;72:25;
74:1,18,24;75:3;76:1;77:7;
78:13;80:19;81:21;82:18,24;
83:8;84:4,7;85:16,19;87:8,10
**Fargo's (24)**
23:13;24:5;25:1;26:2,5;
30:4,19;35:13;36:24;37:11,
25;38:14;39:3,15;40:25;41:3;
50:7,10;51:4;52:17;63:6;
74:8;83:3,21
**February (7)**
16:25;17:9;31:9,12,18;
50:12;67:7
**fees (1)**
45:23
**few (1)**
57:25
**FHA (1)**
69:21
**file (9)**
44:5;52:25;55:19;60:14;
64:10;71:7;84:10,18;86:12
**filed (2)**
15:5;36:4
**files (2)**
11:14;83:21
**filing (1)**
15:2
**filled (1)**

**66:7**
**Financial (2)**
17:7;19:13
**financials (2)**
66:13;67:11
**find (5)**
15:21;17:16;18:6;20:23;
29:9
**fine (2)**
65:2;89:4
**first (12)**
6:5;17:13;25:9;32:15;
33:24;42:6;60:21;61:15;73:5,
11,18;88:1
**five (3)**
7:6;8:8,13
**follows (1)**
6:8
**foreclosing (1)**
83:18
**foreclosure (42)**
13:17,23;26:15;33:2;46:10,
23;47:25;54:12;56:9;58:20,
24;59:2;65:9;70:23;71:10,24;
72:23;73:6,13;75:20;78:15,
24;79:2,3,4,8,25;80:9,16,20,
22;81:2,11,23;83:11,23;
84:25;85:6,8;86:15,21;87:3
**foreclosures (1)**
72:11
**foresaw (1)**
76:10
**forget (1)**
51:10
**Form (20)**
21:21;22:4;27:8;47:7;49:7;
61:25;63:19;64:17;65:3,10;
70:25;73:7;76:2,23;77:10;
80:24;81:25;83:12;84:6,14
**forward (3)**
48:21;63:2;67:24
**four (1)**
62:22
**fraud (2)**
81:23;82:16
**Freddie (1)**
69:19
**Friday (1)**
6:1
**full (3)**
20:12;42:25;43:6
**Funds (2)**
20:10,13
**future (1)**
76:5

## G

**gauge (1)**
62:21
**gave (1)**
64:2
**general (1)**
82:12
**generally (2)**
61:2;78:23
**geographical (1)**
8:4
**gives (1)**
22:1
**goes (2)**
22:23;52:1
**Good (1)**
6:11
**graduate (1)**
10:9
**grant (3)**
23:10,22,25
**great (1)**
19:3
**ground (1)**
7:21
**Group (2)**
8:11;9:8
**groups (1)**
88:21
**guarantee (1)**
85:17
**guaranteed (3)**
44:21,23;45:4
**guarantied (1)**
44:16
**guess (4)**
21:23;67:23;78:21;79:8
**guidelines (5)**
72:6,9,14,15,16

## H

**half (1)**
8:9
**handled (1)**
60:13
**handling (2)**
56:14;72:21
**handwriting (2)**
53:7;61:1
**handwritten (1)**
53:1
**happen (1)**
77:1
**happened (4)**
13:22,24;75:18;76:5
**hardship (1)**
66:12
**head (1)**

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 30 of 40

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

17:15
**held (4)**
    7:9;13:18;55:16;68:20
**Here's (1)**
    79:19
**hesitation (1)**
    83:23
**high (1)**
    12:8
**Hillsborough (2)**
    8:10;9:7
**hinged (1)**
    76:14
**history (1)**
    21:1
**HOA (13)**
    34:4;64:24;65:13,14;66:24;
    67:9;73:20;76:7;77:16;78:24;
    80:8;83:23;84:25
**HOAs (3)**
    69:7;73:15;76:11
**hold (2)**
    8:23;54:18
**holder (6)**
    42:25;43:18,19,21;73:1,1
**homeowners (13)**
    13:10,11,14;21:3;22:2;
    24:8;34:1;36:21;51:1;64:15;
    65:7;71:4;74:19
**housing (1)**
    66:23

                    **I**

**identification (30)**
    12:12;14:15;16:16;23:4,16;
    25:15;26:19;28:14;29:18;
    30:7;32:2;35:2,17;36:14;37:2,
    14;38:3,17;39:6,18;40:13;
    41:6,19;46:2;48:4;49:22;
    50:17;53:14,17;79:18
**identify (1)**
    53:18
**image (3)**
    52:25;61:4;63:4
**imaged (9)**
    55:19;59:19,21;60:3,7,8,14;
    61:24;63:7
**imaging (17)**
    15:12;24:19;25:5;26:11;
    30:25;31:4,8,15,22;54:13,23;
    59:17;62:15,18,20;63:14;86:6
**immediately (1)**
    9:16
**implied (1)**
    49:1
**important (3)**
    27:3;36:1;42:3

**impounds (1)**
    28:5
**inactive (1)**
    10:22
**Inc (2)**
    19:12,20
**included (6)**
    16:8;31:20;49:5,18;60:14;
    65:12
**includes (2)**
    11:10;22:18
**including (2)**
    13:3;21:19
**indicate (3)**
    17:19;29:15;56:17
**indicated (8)**
    47:21;50:11;55:2;63:24;
    65:22;66:24;67:12;74:12
**indicates (1)**
    18:9
**indicating (3)**
    56:25;67:10;81:15
**indication (1)**
    67:8
**indigent (1)**
    9:3
**individuals (3)**
    9:2,3;12:4
**industry (1)**
    10:12
**information (20)**
    13:21;15:1,6;17:17;18:7;
    19:2;22:14,18;25:7;29:9;
    47:18;53:2;64:3,8;66:19;
    82:18,24;83:19;84:2;86:19
**in-house (1)**
    11:9
**inputted (1)**
    30:24
**installments (2)**
    28:4;42:9
**instances (1)**
    81:1
**instrument (3)**
    19:23;20:15;23:1
**insurance (2)**
    21:10;45:3
**insured (1)**
    69:21
**interact (1)**
    12:5
**interest (24)**
    17:14;19:16;25:10;27:17;
    28:4;32:16,21,23;33:25;34:8,
    15;42:10;44:11,14,15,17,22;
    69:8,15,24;70:9,12;73:1;76:8
**interested (1)**
    68:13

**internal (2)**
    86:13;87:1
**interpret (1)**
    73:15
**interpretation (2)**
    76:25;77:13
**interpreted (1)**
    76:20
**interrogatories (5)**
    24:23;62:10;64:3;78:4;82:3
**Interrogatory (4)**
    78:6;80:3,4;82:6
**into (8)**
    26:4;30:24;41:2;47:16;
    50:14;56:17;63:7;76:5
**Investments (6)**
    6:12;82:19,25;83:4,9;84:3
**investor (4)**
    17:25;18:2;43:16,17
**involved (1)**
    17:10
**issue (2)**
    24:1;74:25
**items (3)**
    20:4,10,14
**Items' (1)**
    20:4

                    **J**

**January (19)**
    13:19,25;31:9,12,17;39:12;
    40:22;48:1;55:5;56:9;59:12,
    12,23,24;60:1,1,7;67:7;80:20
**JEONG (5)**
    43:19;87:15,18;88:22,24;
    89:1
**job (1)**
    9:16
**jobs (2)**
    9:15,18
**Joel (1)**
    16:25
**joining (1)**
    8:12
**judgment (1)**
    15:5
**June (6)**
    8:19,19;9:23,24;62:16,20

                    **K**

**keep (4)**
    18:11,21;25:10;52:7
**kind (2)**
    10:20;64:19
**KLOMP (49)**
    19:4;21:5,21;22:4;24:10;

**27:8;28:11;33:21;34:16,23;**
**45:12,17;47:7;49:7,19;55:12;**
**61:8,11,22,25;62:6;63:19;**
**64:17;65:2,10,18;69:25;70:2,**
**4,25;72:24;73:7;74:21;75:5,**
**21,23;76:2,23;77:10;80:24;**
**81:17,25;83:12;84:6,14;**
**85:25;88:23;89:2,4**
**knew (6)**
    34:4;80:19;84:4,7,8,11
**knowing (1)**
    73:14
**knowledge (4)**
    24:11;75:9,11;84:11
**known (1)**
    34:6
**knows (1)**
    82:21
**Koenig (7)**
    13:19;14:2;54:15;58:23;
    71:9,16;83:1

                    **L**

**lack (1)**
    57:4
**language (1)**
    49:17
**Las (2)**
    6:1;13:5
**last (3)**
    6:16;16:2;42:6
**later (2)**
    79:6;82:14
**Law (11)**
    8:10;9:7,11,12,17,19,22;
    10:21;64:4,5;77:14
**lay (1)**
    73:18
**least (4)**
    32:18;54:23;61:5;84:23
**left (3)**
    33:6;47:19;53:2
**legal (1)**
    73:18
**lender (7)**
    19:21;20:11;22:21,24;24:7;
    34:20;83:16
**lender's (1)**
    19:22
**lending (1)**
    10:12
**letter (1)**
    66:12
**letters (1)**
    88:2
**licensed (3)**
    10:21,23,24

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 31 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

**licenses (1)**
11:4
**lien (37)**
20:16;25:24;30:1,16,22;
35:10;36:21;38:11;39:11;
51:1;53:5,9,19;56:16;61:15,
17;63:11;68:2,17;69:4;71:4;
73:11,16,19;74:2;76:12;
77:16,17;78:8,9,14;79:4;80:6,
8,22;86:14;87:2
**liens (6)**
67:19;72:11,21;76:25;
79:24;81:2
**limited (2)**
67:4;72:24
**lis (1)**
50:5
**listed (1)**
14:5
**litigation (2)**
11:8;31:16
**little (1)**
53:20
**LLC (11)**
6:12;13:19;14:2;58:23;
71:16;82:20;83:1,1,5,9;84:4
**Loan (43)**
7:2,10;11:6,20;17:6,14,22,
25;18:16;20:20,24,21:4;24:9;
27:20;28:8;32:16;33:25;34:4,
15,22;43:16;44:16,23;45:2,4,
5;52:5,8;65:17,23;66:4;69:9,
19,21,24;70:9,13,16;72:4,7;
85:11,17;86:10
**loans (1)**
76:7
**local (1)**
11:9
**located (5)**
13:4;45:17,22;22:15;34:1
**lodge (2)**
33:21;72:24
**logged (1)**
80:17
**logging (1)**
70:4
**long (1)**
7:3
**look (49)**
12:14;13:2;14:17;15:18,21;
16:2,18;17:16;18:4,6,25;
20:23;23:6,18;24:15;25:17;
26:7,7,21;28:16;29:8,20;30:9,
23;32:4;33:4,14,20;35:4,19;
36:16;37:4,16;38:5,19;39:8,
20;40:15;41:8,21;46:4;48:6;
49:24;50:19;53:21;55:12;
62:14;72:17;86:18

**looked (8)**
24:17,20;55:7,18;59:17;
63:23;64:12;75:1
**looking (10)**
19:17;21:1;26:16;31:21;
57:12,13;60:15;62:21;85:14;
86:4
**looks (6)**
15:7;26:13;53:24;60:8,9;
61:5
**lose (1)**
45:5
**loss (1)**
45:19
**lot (2)**
49:12;69:4
**LPS (1)**
29:12
**Lynn (1)**
16:25

# M

**MAC (3)**
53:16,17;69:19
**Mae (2)**
69:8,14
**Mail (4)**
51:14,17;53:16;56:4
**mailed (3)**
74:2,6;75:4
**maintain (1)**
85:19
**many (3)**
7:19;8:1;84:21
**March (3)**
27:16;40:7;48:19
**mark (1)**
79:15
**marked (63)**
12:11,15;14:14,17;16:15,
18;17:3;23:3,6,15,18;25:14,
17;26:18,21;27:7;28:13,16;
29:17,20;30:6,9;32:1,4;35:1,
4,16,19;36:13,16;37:1,4,13,
16;38:2,6,16,19;39:5,8,17,20;
40:12,15;41:5,8,18,21;42:22;
44:2;46:1,4,14;48:3,6;49:21,
24;50:16,20;56:25;68:2;
79:17;81:16
**material (1)**
75:13
**matter (2)**
6:13;65:4
**May (25)**
8:18,19;9:24,24,24;11:21;
14:2;18:15,15;19:16;22:21;
29:12;54:20;67:21;68:5,5,8,

14,15;71:22;82:8;84:22,22;
85:5;86:6
**maybe (2)**
53:6;68:16
**mean (12)**
12:2;22:7;32:24;44:21;
57:5;62:1;63:8,25;73:17;
76:24;77:2;84:15
**means (4)**
20:4;46:20;53:4,11
**Mediation (3)**
46:11,23;47:2
**meet (1)**
44:24
**member (1)**
45:1
**memorialized (2)**
81:9,13
**mention (2)**
63:17;72:10
**mentioned (5)**
31:3;64:22;65:7;67:14;84:1
**mentioning (1)**
62:4
**mentions (5)**
28:3;36:8;48:18;86:13;87:1
**MERS (6)**
19:16,19,20,22;32:14;33:18
**MERS's (1)**
33:11
**might (2)**
56:15;68:7
**milestones (1)**
33:18
**MIN (6)**
33:6,15;53:20,22,25;87:19
**mind (1)**
51:5
**Minneapolis (4)**
53:6,22,23;54:6
**minute (1)**
62:24
**modification (3)**
65:17,23;66:5
**Moines (2)**
51:18;54:9
**money (1)**
45:5
**monthly (3)**
66:22,24;67:10
**More (3)**
7:20;8:2;70:15
**mortgage (20)**
10:12;15:25;17:18;18:8;
19:1,11,19;20:25;24:18;25:4;
29:10;45:3;56:17,20,21;62:8;
66:10;73:11,19;81:10
**motion (1)**

15:4
**moved (2)**
47:16,21
**MSP (1)**
81:12
**much (2)**
69:23;85:1
**Myers (1)**
40:5
**Mylor (2)**
17:7;19:13

# N

**NA (1)**
12:21
**nailed (1)**
65:3
**name (5)**
6:14,16;42:25;43:7;78:1
**named (1)**
72:25
**National (9)**
27:11;29:1;36:5;40:6,8;
42:13;46:16;48:14;85:20
**necessarily (4)**
56:13;57:5;63:4,5
**need (1)**
18:24
**Nevada (9)**
6:1;13:5;46:10,22;59:8;
71:8;73:14;76:19;77:6
**next (3)**
43:10,23;52:13,18,20
**nominee (1)**
19:21
**non-applicable (2)**
46:20,25
**none (1)**
46:24
**notation (2)**
56:19,20
**note (22)**
14:21,24;15:7,13,14;16:8,
13,14;17:3;20:12,12;24:17,
18;43:1,18,21;44:11,14;56:3,
24;57:4;68:11
**notes (15)**
29:10,12,15;62:4,7;63:16,
20,25;64:12;81:11,12,15,19;
86:20,21
**notice (91)**
12:20,25;14:5;22:1,6;
25:23;26:9,17;27:2,3,6,20;
28:22,22;29:5;30:15,22;
35:10,25;36:1,4,8;37:22;
38:11,25;39:11;41:12,12,15;
42:2,3;48:12;49:6;50:5,15,25;

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 32 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

52:18;54:6,17,18,21;55:17,
24;56:25;57:23;58:3,9,11,16;
59:13,18;60:6,16;61:19;62:5,
10,16;63:18;67:21,23;68:1,
12;73:13,20;74:1,9,12,18,24,
25;75:3,14,14,15,17,18;76:9;
77:9;78:8,20,24;80:5,12,13,
17;81:8,16;84:2,4,8
**notices (13)**
21:8;42:8;49:10,12,18;
54:12,24;56:4,5,7;59:6;69:1,5
**November (5)**
28:5,9;36:10;42:11;45:16
**number (14)**
11:16;15:2,2,3;21:8;26:10;
33:10,12;52:4,7,9;55:9;76:15;
87:20
**numbers (2)**
51:25;52:4

## O

**oath (1)**
6:8
**object (2)**
64:25;65:3
**Objection (40)**
21:5,21;22:4;24:10;27:8;
28:11;33:21;34:16,23;45:12,
17;47:7;49:7,19;61:8,22,25;
62:6;63:19;64:17;65:10,18;
69:25;70:4,25;72:25;73:7;
74:21;75:5,21;76:2,23;77:10;
80:24;81:17,25;83:12;84:6,
14;85:25
**objections (2)**
78:12,13
**obligation (2)**
22:2;66:24
**obligations (1)**
44:24
**obtain (4)**
17:13;25:6;76:12;85:16
**obtained (8)**
25:10;30:21;32:16,21,22;
33:24;70:9,12
**obtaining (1)**
34:15
**Occidental (1)**
10:8
**occurred (3)**
59:14,20;78:23
**occurs (2)**
79:3,5
**off (11)**
17:15;28:1;37:7;55:14;
68:20,23;78:14;79:4,24;80:8,
15

**office (2)**
59:8;89:3
**Off-the (1)**
55:16
**ombudsman's (1)**
59:8
**once (1)**
60:20
**one (30)**
9:10;15:18;21:23;33:15;
34:5;37:7;42:7;44:2;49:11;
54:22,25;55:3,8;58:5,6,13;
60:10;61:1,5;66:15;67:10;
68:6,17;72:1;81:13;82:1;
84:23;85:13,14;88:8
**ones (2)**
16:5;67:3
**one's (1)**
68:3
**ongoing (1)**
82:13
**only (7)**
45:22;60:20;67:3,5;68:5,9;
86:2
**oOo- (2)**
6:3;89:7
**operating (1)**
77:8
**opinion (1)**
83:24
**oppression (1)**
81:24
**option (1)**
33:3
**Oregon (2)**
6:25;10:25
**original (4)**
15:13,14,14,16
**originated (3)**
17:6;19:14;85:11
**originating (2)**
24:7;34:20
**origination (2)**
17:11;72:22
**others (3)**
7:15;44:9;68:4
**otherwise (1)**
13:13
**out (7)**
15:22;17:17;20:23;45:2;
56:8;66:7;73:18
**outside (2)**
64:19;67:2
**over (4)**
7:6;8:5,6;20:15
**owed (2)**
66:19;67:9
**own (6)**

18:15;72:16;78:15;79:5;
80:16,22
**owned (3)**
12:9,10;72:17
**owner (2)**
17:24;45:5
**ownership (1)**
44:15

## P

**Padre (4)**
13:4,8;14:22;47:5
**Page (25)**
13:2;14:6,6;16:2,3,5;18:9;
19:17;20:3,9,9;21:13;22:19;
27:24;36:9;42:6,17,24;43:10,
23;48:23;52:13,19;79:22;88:1
**paid (7)**
20:12;21:8,9;73:19;76:13,
22;80:25
**Paragraph (11)**
19:19;20:3;22:19,24;27:25;
42:6,24;43:6,11;44:1;48:24
**Parcel (1)**
13:5
**part (15)**
16:14;21:11,22;22:7;31:19,
22;34:17;35:13;52:22,25;
55:19;67:3,24;72:15;86:2
**participate (1)**
70:21
**particular (1)**
30:25
**Pause (1)**
37:8
**pay (15)**
20:10;22:2,20,21;36:10;
69:23;77:16;78:14,25,25;
79:4;80:8,15,21;81:2
**paying (2)**
45:15;79:24
**payment (4)**
20:13;21:1;28:4;71:18
**payments (7)**
20:11;27:19;28:9;45:18;
71:12,15;77:12
**pendens (1)**
50:5
**Pennsylvania (1)**
10:25
**people (1)**
12:3
**Perfect (1)**
19:8
**perhaps (1)**
81:11
**period (7)**

24:20;31:5,7;66:16;67:4,8;
72:21
**periodic (1)**
20:11
**person (5)**
14:10;64:5,9,11;83:10
**Philadelphia (5)**
8:13,16,21;9:4,14
**phone (1)**
12:5
**place (3)**
15:21;17:16;29:8
**places (1)**
81:13
**planned (7)**
21:18,20,22,25;22:7,8,15
**platform (15)**
15:25;17:18;18:9;19:1;
20:25;25:4;29:11,13;52:11;
56:4,17,21;62:8;81:10;88:5
**platforms (1)**
25:2
**pleadings (1)**
11:11
**please (17)**
6:14;13:2;14:18;23:7;
28:17;29:21;30:10;32:5;
35:20;36:17;37:5,17;39:9,21;
41:9;48:7;50:20
**plural (1)**
59:3
**pm (2)**
6:2;89:6
**point (4)**
65:22;70:20;80:14;82:16
**policies (1)**
72:20
**policy (5)**
56:2;78:14,17;80:8;86:9
**Political (1)**
10:6
**Pool (6)**
6:12;82:20,25;83:5,9;84:3
**pooling (1)**
72:3
**portfolio (1)**
72:16
**Portland (1)**
6:25
**position (12)**
7:1,9;8:20;9:8;10:17,19,20;
73:16,18,20;82:16;84:3
**positions (2)**
7:12;8:23
**positive (1)**
27:23
**possession (2)**
49:2;63:7

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 33 of 40

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

possible (1)
  61:19
posted (2)
  74:20;75:1
postponing (1)
  67:22
potential (1)
  33:3
potentially (1)
  53:5
power (1)
  42:19
practice (6)
  9:11;10:21,23;56:2;76:8;
  79:23
practices (1)
  72:19
preceding (1)
  52:3
predated (1)
  86:6
preparation (2)
  24:16;85:24
prepared (1)
  10:16
preparing (1)
  33:2
present (1)
  42:8
preservation (1)
  88:14
pretty (1)
  7:21
previous (1)
  52:18
primary (5)
  11:21;46:24;47:2,5,9
principal (2)
  28:4;42:10
Prior (10)
  8:12;9:18;58:20;62:10,15,
  16,18;63:15;76:3;77:18
priority (1)
  20:15
procedure (1)
  56:3
procedures (1)
  72:20
proceedings (2)
  37:8;89:6
proceeds (5)
  78:15;79:5,24;80:8,23
process (6)
  17:11;34:18;45:8;66:11;
  76:14;86:20
produced (2)
  24:21;31:23
production (6)

24:22;31:14,19;67:3;68:4;
  86:3
professional (1)
  11:3
Program (3)
  46:11,23;47:2
properties (1)
  72:14
property (42)
  13:3,4,6,7;14:22;17:1;
  20:16;22:8,15;24:1;33:25;
  34:8,22;46:21,25;47:5,17,19;
  58:19,23;59:9;64:16;70:24;
  71:5,13,16,20;72:20;73:12;
  74:20;75:1;76:9;77:17;78:10;
  80:7;83:18,21;84:12,19;
  86:16;87:4;88:14
protect (1)
  76:8
provide (5)
  20:13;66:18,21;73:15,20
PSA (1)
  72:18
public (1)
  68:4
PUD (1)
  22:20
pull (1)
  33:13
purchase (1)
  45:3
purchased (2)
  84:12,12
purpose (3)
  21:19;85:3,6
pursued (1)
  65:24
pursuing (1)
  33:2
put (5)
  26:4;52:2;60:23;67:1;74:12

Q

quick (1)
  55:12

R

range (1)
  31:21
real (4)
  13:4;55:12;59:8;71:8
really (2)
  73:17;87:15
recall (20)
  16:12,13;20:21;21:1;25:9,
  12;26:6;28:12;32:20;45:22,

24;47:20,23;59:24;60:25;
  66:22;70:8;85:7,13;87:23
receipt (1)
  63:17
receive (10)
  53:15;57:8;59:13;62:10,22;
  75:14,15;76:3,9;78:23
received (49)
  26:8;31:11,16,17;34:7;
  41:2;50:14;51:6,20,20;53:8,
  18;54:6;55:2;56:13,15;57:1,5,
  10,14,15,15,18;58:6,13;59:18,
  18;60:4;61:6,15,17,20;62:16,
  17,19,25;66:13;67:18;73:13;
  74:6,9;75:14,17,19;76:18;
  77:9,18;79:9;80:5
receives (3)
  56:4;61:2;85:20
receiving (11)
  57:23;58:8,11,15;59:5;
  67:15;78:8,20;80:12,13;84:2
recognize (27)
  12:17;14:18;16:21;21:14;
  23:7,21;25:20;26:24;28:19;
  29:23;30:12;32:7;35:7,22;
  36:17;37:19;38:8,22;39:9,23;
  40:18;41:9,24;46:7;48:9;50:2,
  22
recollection (2)
  19:5;43:15
record (10)
  6:15;19:2;37:7;43:8;55:14,
  16;68:20,21,23;69:13
recorded (37)
  16:25;17:3;23:11,23;25:24;
  26:13;27:4;28:24;29:2;30:1,
  16;32:11;35:11;36:2,21;
  37:23;38:11,25;39:12;40:1,
  21;41:13;42:3,13;44:7;46:11,
  17;47:9,15;48:12,15;50:12;
  51:1;55:5,8,18;67:20
Recorder (21)
  25:25;27:5;28:25;30:2,17;
  32:12;35:12;36:3,22;37:23;
  38:12;39:1,13;40:2,23;41:14;
  42:5;46:12;48:13;50:13;51:2
recording (1)
  40:9
records (24)
  23:13;24:5;26:2,5;30:4,19;
  35:14;36:24;37:11,25;38:14;
  39:3,15;40:25;41:3;50:7,10,
  14;51:4;52:18;64:21;68:4;
  74:8;83:4
refer (3)
  13:12;14:2;27:6
reference (2)
  13:16;33:11

references (3)
  15:1;44:1;53:25
referring (3)
  13:7;61:8;67:17
refers (2)
  13:3;42:21
refresh (2)
  19:5;43:14
regard (4)
  63:9;76:6,11;83:24
regarding (1)
  49:1
Registration (2)
  19:11,20
regular (3)
  9:16;11:13,16
reimbursement (5)
  45:7,11,13,18,23
related (4)
  46:25;64:23;67:6;69:5
relates (3)
  46:13;86:15;87:4
relating (1)
  78:7
relation (7)
  58:2;70:23;71:13,16,20;
  83:5,10
relationship (2)
  82:19,25
release (12)
  25:23;26:8,17;30:1;53:5,9,
  19;56:16;61:16,18;63:11;68:1
releases (2)
  68:17;69:4
remedy (1)
  73:15
remember (5)
  9:10;10:19;31:2;72:1;85:1
remembered (1)
  26:8
rephrase (3)
  22:9;44:12;83:7
reporter (4)
  6:5;88:24;89:2,5
represent (2)
  6:12;9:2
request (4)
  24:22,22;45:23;88:24
requested (1)
  29:11
requesting (1)
  29:16
requests (3)
  66:10;69:17;82:11
required (6)
  21:3;22:12;45:2;66:12,15,
  18
rescinded (2)

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 34 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

29:6;41:16

**rescission (3)**
28:22;29:12;41:12

**research (1)**
11:11

**reservation (1)**
82:13

**residence (4)**
46:24;47:3,6,10

**resolution (1)**
11:10

**respond (1)**
64:3

**responded (3)**
82:1,12,15

**responding (1)**
78:21

**responds (1)**
78:13

**response (8)**
64:10;78:11,19;79:8,11;
80:3,7,11

**responses (5)**
62:9;63:21,24;78:3;79:15

**result (2)**
58:7;59:5

**review (23)**
12:24;14:7;25:1,4;31:7,22;
44:5;62:7;65:21,24;66:2;
77:20;81:3,6,8,12,15,18;
84:18;85:7,23;86:12,22

**reviewed (18)**
31:4,11,13,14,16,18;34:13,
21;49:13;63:21,25;64:21;
65:11;66:25;67:4,5;69:14;
78:3

**reviewing (1)**
11:11

**rider (5)**
21:17,18,20;22:1,11

**right (23)**
18:14;31:5;32:16;33:5;
42:15,22;51:22;54:2;55:10;
57:6,9;62:24;63:2,7;69:6;
75:16;77:5,9;78:4;80:2,18;
83:25;86:23

**rights (2)**
17:20;70:16

**RMA (2)**
66:8,14

**role (2)**
19:11;73:17

**rule (2)**
76:6,10

**rules (1)**
7:22

# S

**sale (96)**
13:17,23;23:10,22,25;
26:15,15;37:22;38:25;40:21;
42:19;47:25;48:12,18,21,25;
49:6,11,13;54:18,21,24;55:4,
17;56:5,9;58:9,20,24;59:2,11,
13,14,19,20;61:20,21;62:5,11;
63:15,18;66:3,11,18;67:7,21,
22;68:12;69:1,6;70:23;71:5,
10,24;72:23;73:6,13,20;
74:25,25;75:4,19,20;76:4;
77:2,19;78:15,22,24;79:2,3,5,
12,14;80:9,16,17,19,20,22;
81:3,16,23;82:21;83:6,11,23,
24;84:5,12,13,25,25;85:6,8,17

**Sales (4)**
59:3;67:23,23;79:25

**same (10)**
15:10,11;20:3;33:15,17,17;
45:17;52:22,25;77:8

**saw (3)**
21:8;26:10;54:13;66:14;
76:5;87:19;88:1

**saying (4)**
57:10;76:18;79:11;80:7

**scanned (5)**
60:17;19,20,22;61:6

**scape (5)**
52:10,10;88:4,7,15

**school (3)**
9:17,19,22

**science (1)**
10:6

**Scope (22)**
21:5;24:10;28:11;33:22;
34:16,23;45:12;49:19;52:11;
61:3;62:6;64:19;65:18;69:25;
74:21;75:5;76:2;81:17;85:25;
88:4,7,15

**scripting (3)**
12:1,2,4

**second (9)**
27:14,25;36:9;37:7;48:23,
24;55:3,15;74:25

**Section (2)**
20:5,8

**secure (1)**
17:3

**secured (2)**
22:25;43:1

**security (3)**
19:23;20:15;23:1

**seeing (9)**
16:12,13;20:22;45:22,24;
47:20;60:25;66:22;85:13

**seeking (1)**
45:7

**sell (8)**
27:3;28:23;36:1,21;41:13;
42:2;50:25;54:17

**send (1)**
53:15

**sent (7)**
53:21,21;56:8;63:9,11,12;
65:25

**sentence (1)**
56:22

**Sep (1)**
51:14

**separate (2)**
19:20;22:11

**separately (1)**
31:18

**September (9)**
42:4;51:7,19;53:9;54:7,8,9;
60:21;77:5

**service (2)**
35:11;39:12

**servicer (3)**
17:22;18:3;43:11

**services (2)**
45:1;63:12

**servicing (51)**
7:14;12:7,9,10;15:25;17:18,
20;18:8,10;19:1;20:25;25:2,4;
27:11;29:1,10;32:23,24;36:5;
40:6,8;42:14;46:17;48:15;
51:13,17;56:3,17,21;62:4,7,8;
63:16,20,25;64:12;70:16;
72:3,6,9,13,15,16;77:25;78:2;
81:10,11,14,19;85:21;86:20

**several (1)**
40:10

**SFR (8)**
6:12;77:7;82:19,25;83:4,9;
84:3,11

**shall (2)**
20:10;22:24

**short (6)**
66:3,11,18;67:6;85:6,8

**shortly (1)**
34:7

**show (1)**
60:12

**showed (1)**
68:12

**shown (1)**
16:5

**sign (1)**
22:12

**signature (1)**
15:15

**signed (1)**

64:11

**signify (1)**
32:22

**similar (2)**
49:11;54:14

**similarities (1)**
49:14

**simple (1)**
87:16

**single (1)**
65:22

**situations (2)**
77:15;79:25

**six (1)**
8:9

**six-month (1)**
8:9

**solely (1)**
19:21

**solicitations (1)**
65:25

**solid (2)**
35:11;39:11

**somebody (3)**
19:1;54:10;63:23

**someone (2)**
29:9;66:1

**Somerset (2)**
13:11,14

**something's (1)**
44:20

**sometime (5)**
26:14;31:11;32:18;59:20;
61:6

**sometimes (2)**
56:12;83:15

**soon (1)**
34:5

**Sorry (9)**
14:23;18:23;43:19;55:3;
57:12;64:25;65:20;75:22;
82:5

**sort (1)**
44:14

**sound (2)**
78:16,19

**span (1)**
86:4

**speak (1)**
25:6

**speaking (2)**
61:2;78:23

**specialist (2)**
7:13;11:24

**specific (7)**
11:14;31:4;47:23;52:5;
56:14;64:5;69:16

**specifically (4)**

30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

64:7;85:7,13,14
**specified (2)**
  13:13;24:19
**speculating (4)**
  62:1;63:9;64:1;76:4
**staff (1)**
  9:9
**stamp (4)**
  53:8,11;60:21;61:7
**Stamped (16)**
  19:18;20:9;21:14;22:19;
  27:24;30:24;36:9;42:7,18;
  43:23;48:23;51:6,13;52:13;
  53:5;57:17
**stamps (7)**
  54:14;55:2;57:9;60:6,11,
  23;61:1
**stand (1)**
  87:20
**standard (2)**
  49:15;89:3
**standing (1)**
  74:5
**stands (2)**
  51:10;53:17
**started (1)**
  8:18
**starting (2)**
  14:6;28:9
**starts (2)**
  28:1;53:10
**state (4)**
  6:14;46:10,22;68:25
**statement (1)**
  80:9
**States (4)**
  8:6;22:20;77:13,14
**statute (1)**
  76:20
**step (1)**
  60:20
**STEPHANIE (2)**
  6:4,16
**steps (3)**
  77:20;80:12,14
**still (4)**
  28:8;72:16;76:21;80:21
**stored (2)**
  52:17,20
**student (1)**
  10:20
**subject (2)**
  34:5;72:18
**substituted (3)**
  40:3,5,9
**Substitution (1)**
  40:1
**successors (1)**

19:22
**sue (1)**
  71:3
**sufficient (1)**
  74:13
**suggests (1)**
  83:4
**sum (1)**
  20:12
**summary (1)**
  15:4
**summer (1)**
  9:17
**sup- (1)**
  80:10
**super-priority (2)**
  73:16;76:12
**supplement (2)**
  80:11;82:14
**Support (2)**
  51:14,17
**supposed (1)**
  63:1
**Supreme (2)**
  76:20;77:6
**Sure (11)**
  22:11;26:7;49:17;53:10;
  56:1;59:22;68:10;71:23;
  73:17;80:2;88:8
**surrounding (1)**
  81:22
**sworn (1)**
  6:5
**system (20)**
  15:12;24:19;25:5;26:11;
  30:25;31:4,8,15,22;33:11,12;
  54:13,23;59:17;62:15,18,20;
  63:7,14;86:6
**Systems (2)**
  19:11;25:2

**T**

**talk (4)**
  12:3;13:6,17;29:9
**talked (1)**
  87:6
**talking (4)**
  13:13,18,24;67:13
**taxes (4)**
  20:14,19,24;21:10
**technically (1)**
  65:25
**tells (1)**
  69:14
**testified (4)**
  6:7;7:24;8:4;62:25
**testify (4)**

6:6;10:16;14:11;25:7
**Thanks (1)**
  88:23
**theory (1)**
  63:8
**thinking (1)**
  84:16
**though (4)**
  15:20;58:5;75:16;83:16
**three (2)**
  54:24;88:20
**timely (1)**
  76:9
**times (2)**
  7:19;8:1
**title (3)**
  33:4;49:2;86:9
**today (10)**
  10:14,16;12:25;13:7;14:24;
  15:7;25:7;72:2;77:1;86:23
**told (1)**
  54:4
**took (6)**
  45:2;57:22;58:2,4,7;78:7
**top (3)**
  15:1;17:15;51:7
**Topic (2)**
  82:5,9
**topics (3)**
  14:5,8,12
**total (1)**
  73:22
**touched (1)**
  60:13
**training (1)**
  10:20
**transaction (1)**
  70:12
**transcript (1)**
  12:3
**transferred (3)**
  19:15;24:1;57:25
**trash (1)**
  68:7
**trials (1)**
  7:24;8:3
**tried (1)**
  66:4
**trouble (1)**
  78:21
**true (1)**
  80:9
**trust (27)**
  16:10,24;17:2;19:12,18;
  21:18,20;27:3,7;28:23;32:10,
  22,25;33:5,16;34:6;36:1;
  41:13;42:3,21;43:1,8;44:6;
  46:14;54:1;73:5;77:25

**trustee (16)**
  27:13,14,15;29:14;38:25;
  40:1,3,9;48:12;49:6;54:18,21;
  61:20;62:5;67:21;85:20
**trustees (1)**
  88:16
**trustee's (11)**
  37:22;40:21;49:10,12;
  54:24;55:4,17;58:9;68:12;
  82:21;85:16
**truth (3)**
  6:6,6,7
**try (3)**
  58:18,22;71:18
**trying (1)**
  53:12
**turn (3)**
  20:8;21:13;42:17
**Twenty-seven (1)**
  61:10
**two (3)**
  67:10;81:13;84:22
**type (4)**
  9:11;44:15;45:9;70:11
**types (1)**
  49:18

**U**

**Um-hmm (1)**
  28:2
**unclear (1)**
  70:20
**under (12)**
  6:8;19:23;20:11;22:24;
  27:3;28:23;36:1,21;41:13;
  42:3;51:1;77:8
**undergrad (3)**
  10:7,15,18
**undergraduate (1)**
  10:1
**understood (1)**
  22:6
**unfairness (1)**
  81:24
**uniform (1)**
  19:14
**unit (5)**
  21:18,20;22:1,8,15
**United (1)**
  8:6
**University (1)**
  9:20
**unless (1)**
  13:13
**unlike (2)**
  60:10,10
**unrecorded (1)**

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 36 of 40
30(b)(6) Stephanie Bradford - April 8, 2016
Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.

44:7
unrelated (2)
   31:15;67:6
up (2)
   33:5;83:16
upon (3)
   40:21;55:4;82:21
use (4)
   33:12;52:11;88:5,12
using (1)
   27:13
usually (4)
   16:10,12;49:18;80:15

          V

VA (9)
   44:16,20,22,23,25;45:3,8,
   10,24
valuation (2)
   84:23;85:4
valuations (1)
   84:19
variables (1)
   76:15
various (1)
   53:14
vault (2)
   15:19;16:1
vaults (1)
   15:19
Vegas (2)
   6:1;13:5
vendor (6)
   88:2,4,4,7,7,15
vendors (6)
   52:7;88:6,10,11,14,18
vendor's (3)
   52:10,10,11
verification (6)
   7:2,10;11:7,20;64:9,12
verified (1)
   64:8
VS (3)
   51:23;52:6;88:2

          W

wait (2)
   80:2,21
waiving (1)
   78:13
warranty (1)
   49:1
waste (2)
   35:11;39:11
water (4)
   67:19,19;68:7,8

way (7)
   15:7;18:25;54:8;60:20;
   76:21;77:2;81:7
Wells (106)
   6:21;7:1,4,5,10;8:7,10,12,
   18;10:13;12:10,21;14:10;
   15:5;17:10,13,22,24;23:13;
   24:5;25:1,9;26:2,5;27:17;
   29:3;30:4,19,21;32:14,15;
   33:24;34:13;35:13;36:6,24;
   37:11,25;38:14;39:3,15;
   40:25;41:3;42:15;43:2,8,12,
   15;44:13;46:18;48:16;50:7,
   10;51:4,11;52:17;53:15;56:2;
   57:2,17,22;58:2,11,16,18,22;
   59:1,7,11;63:6,12;64:4,14;
   69:23;70:9,12,15,21;71:3,7,
   12,15,18,23;72:25;74:1,8,18,
   24;75:3;76:1;77:7;78:13;
   80:19;81:21;82:18,24;83:3,8,
   21;84:4,7;85:16,19;87:8,10
Wells-owned (1)
   72:14
weren't (2)
   21:7,9
WFB (1)
   57:17
WFB000004 (1)
   20:9
WFB000016 (1)
   21:14
WFB000017 (1)
   22:19
WFB00002 (1)
   19:18
WFB000033 (1)
   27:25
WFB000043 (1)
   36:9
WFB000060 (1)
   42:7
WFB000063 (1)
   42:18
WFB000065 (1)
   43:24
WFB000069 (1)
   48:24
WFB000075 (1)
   52:14
What's (23)
   6:22;7:1;14:17;16:18;23:6,
   18;25:17;26:21;29:20;30:9;
   32:4;35:4,19;36:16;37:16;
   38:19;39:8,20;40:15;41:8,21;
   46:4;48:6
Whenever (3)
   13:6,12,21
Where's (1)

15:24
wherever (1)
   63:13
whole (1)
   6:6
Who's (1)
   6:20
within (24)
   8:8;22:15;24:19;26:10;
   31:10,20;33:11,12;34:1;
   51:11;53:15;54:13;56:19,20;
   57:2;61:3;64:5,21;67:8;74:7;
   81:10,12;83:3;86:4
without (6)
   15:6;48:25;60:25;61:1;
   78:12;81:2
WITNESS (4)
   18:18;19:7;43:21;64:25
wondering (1)
   83:20
work (5)
   8:7;11:8,9,14,17
worked (9)
   8:8,10,12;9:7,13;10:15,18;
   11:25;12:8
working (3)
   10:12;66:3;86:7
works (1)
   45:8
writing (3)
   12:2;52:1,2
wrong (1)
   19:16
wrote (1)
   12:1

          X

X2302-04E (1)
   51:14
X9901-11R (1)
   53:11

          Y

year (1)
   10:9
years (7)
   7:6;8:9,14;40:10;62:22;
   84:24,24
year's (1)
   86:4
yesterday (1)
   72:2

          1

1 (9)

6:12;12:11,15;36:10;82:20,
   25;83:5,9;84:4
1:17 (1)
   6:2
10 (3)
   30:6,10;44:1
11 (4)
   7:8;32:1,5;44:2
11th (5)
   40:22;55:5;59:23;60:1,7
12 (3)
   35:1,5;61:14
12/19/2008 (1)
   25:24
12/7/2012 (2)
   39:1;55:18
120 (1)
   85:2
120,000 (1)
   85:2
13 (3)
   35:16,20;51:7
138-26-114-027 (1)
   13:5
13th (3)
   54:9;59:24;60:1
14 (5)
   20:9;36:13,17;51:14,18
1404 (1)
   13:4
15 (3)
   37:1,5,10
152015 (1)
   51:23
15th (1)
   16:25
16 (7)
   37:13,17;54:20;55:10;
   57:15;58:10;67:13
17 (2)
   38:2,6
18 (14)
   38:16,20;54:20;55:13,17;
   57:12,14;58:15;60:11;63:10;
   67:14;75:1,19;81:16
19 (2)
   39:5,9
1-L/R (1)
   53:5
1-LIR (1)
   53:4
1st (8)
   28:5,9;42:11;53:9;54:7;
   60:21;62:16,20

          2

2 (4)

Case 2:15-cv-00796-APG-DJA   Document 66-5   Filed 05/19/16   Page 37 of 40
**30(b)(6) Stephanie Bradford - April 8, 2016**
**Wells Fargo Bank, N.A. vs. SFR Investments Pool 1, LLC, et al.**

13:2;14:14,18;17:4
**2/12/2014 (2)**
  46:11;48:12
**2/15/07 (1)**
  23:11
**2/15/2007 (1)**
  23:23
**20 (2)**
  39:17,21
**2000 (1)**
  10:10
**2002 (1)**
  9:23
**2005 (2)**
  8:17;9:24
**2007 (2)**
  16:25;17:9
**2008 (7)**
  26:14;28:5,10;36:10;42:11;
  45:16;68:3
**2009 (2)**
  27:16;32:18
**2010 (5)**
  7:7,8,8;8:18,19
**2011 (11)**
  7:7;47:22;51:7,14,19;53:9;
  54:7,8,9;56:8;60:22
**2012 (5)**
  31:9,9,12,17;67:7
**2013 (18)**
  13:19,25;31:9,12,18;39:12;
  40:8,22;42:4;48:1;55:5;
  56:10;59:12,23,24;60:1;67:7;
  80:20
**2014 (3)**
  48:19;50:12;77:5
**2015 (2)**
  62:17,20
**2016 (1)**
  6:1
**20th (1)**
  50:12
**21 (2)**
  40:12,16
**22 (2)**
  41:5,9
**23 (2)**
  41:18,22
**24 (2)**
  46:1,5
**25 (4)**
  48:3,7;82:5,9
**25th (1)**
  42:4
**26 (2)**
  49:21,25
**27 (11)**
  50:16,20;55:1;57:1,14,24;

60:11,17;61:9;87:22;88:1
**28 (2)**
  79:16,17

---

### 3

**3 (10)**
  14:6;16:15,19;20:5,8;27:7;
  33:15;42:22;46:14;79:22
**3/13/2009 (1)**
  27:4
**3/31/2011 (1)**
  30:16
**3/7/2013 (1)**
  40:1
**3/8/2013 (1)**
  41:14
**3:24 (1)**
  89:6
**30 (1)**
  7:20
**31st (1)**
  39:12

---

### 4

**4 (6)**
  20:9;23:3,7;42:24;70:3;
  78:6
**4/1/2009 (1)**
  28:24

---

### 5

**5 (5)**
  16:3,3;23:15,19;43:6
**5/21/2009 (1)**
  30:2
**50 (1)**
  8:2

---

### 6

**6 (4)**
  25:14,18;43:11;68:3
**6/16/2011 (1)**
  32:11
**6th (1)**
  17:9

---

### 7

**7 (4)**
  14:6;26:18,22;48:19
**7/17/12 (1)**
  55:8
**7/17/2012 (1)**
  37:23

**708 (1)**
  52:3
**708-0204165757 (1)**
  51:24

---

### 8

**8 (3)**
  6:1;28:13,17
**8/1/2011 (1)**
  35:11
**8/12/2011 (1)**
  36:2
**8/18/2011 (2)**
  36:22;51:2
**8/24/2012 (1)**
  38:12
**89108 (1)**
  13:5

---

### 9

**9 (3)**
  29:17,21;51:14
**9th (5)**
  13:19,25;51:19;54:8;80:20

```
 1   STATE OF NEVADA   )
     COUNTY OF CLARK   )
 2

 3                   CERTIFICATE OF REPORTER

 4       I, Andrea N. Martin, a duly commissioned and

 5   licensed court reporter, Clark County, State of

 6   Nevada, do hereby certify:

 7       That I reported the taking of the deposition of

 8   Stephanie Bradford, commencing on Friday, April 8,

 9   2016, at the hour of 1:17 p.m.; that the witness

10   was, by me, duly sworn to testify to the truth and

11   that I thereafter transcribed my said shorthand

12   notes into typewriting, and that the typewritten

13   transcript of said deposition is a complete, true,

14   and accurate transcription of said shorthand notes;

15   that I am not a relative or employee of any of the

16   parties involved in said action, nor a relative or

17   employee of an attorney involved in nor a person

18   financially interested in said action; further, that

19   the reading and signing of the transcript was

20   waived.

21       IN WITNESS WHEREOF, I have hereunto set my hand

22   in my office in the County of Clark, State of

23   Nevada, this 18th day of April, 2016.

24

25                   ANDREA N. MARTIN, CRR, CCR NO. 887
```

RECEIVED

SEP 13 2011

DOS

DSM Servicing Mail Support
X2302-04E

SEP 09 2011

#14

152015 VS

708-0204165757

Inst #: 201108180001554
Fees: $14.00
N/C Fee: $0.00
08/18/2011 09:48:16 AM
Receipt #: 883945
Requestor:
ALESSI & KOENIG LLC (JUNES
Recorded By: SAO  Pgs: 1
DEBBIE CONWAY
CLARK COUNTY RECORDER

When recorded mail to:

THE ALESSI & KOENIG, LLC
9500 West Flamingo Rd., Ste 205
Las Vegas, Nevada 89147
Phone: 702-222-4033

A.P.N. 138-26-114-027          Trustee Sale No. 25574-1404

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER HOMEOWNERS ASSOCIATION LIEN

WARNING! IF YOU FAIL TO PAY THE AMOUNT SPECIFIED IN THIS
NOTICE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS
IN DISPUTE! You may have the right to bring your account in good standing by paying
all of your past due payments plus permitted costs and expenses within the time permitted by
law for reinstatement of your account. The sale may not be set until ninety days from the date
this notice of default recorded, which appears on this notice. The amount due is $2,195.59 as
of July 12, 2011 and will increase until your account becomes current. To arrange for
payment to stop the foreclosure, contact: Sommerset Homeowners Association, c/o Alessi &
Koenig, 9500 W. Flamingo Rd, Ste 205, Las Vegas, NV 89147.

THIS NOTICE pursuant to that certain Assessment Lien, recorded on March 31, 2011 as
document number 02508, of Official Records in the County of Clark, State of Nevada.
Owner(s): JOEL LYNN ABELSON, of LOT 27 BLOCK 1, as per map recorded in Book
52, Pages 100, as shown on the Plan, Recorded on  as document number  as shown on the
Subdivision map recorded in Maps of the County of Clark, State of Nevada. PROPERTY
ADDRESS: 1404 PADRE BAY DR, LAS VEGAS, NV 89108. If you have any questions,
you should contact an attorney. Notwithstanding the fact that your property is in foreclosure,
you may offer your property for sale, provided the sale is concluded prior to the conclusion of
the foreclosure. REMEMBER YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE
PROMPT ACTION. NOTICE IS HEREBY GIVEN THAT The Alessi & Koenig is appointed
trustee agent under the above referenced lien, dated March 31, 2011, executed by
Sommerset Homeowners Association to secure assessment obligations in favor of said
Association, pursuant to the terms contained in the Declaration of Covenants, Conditions, and
Restrictions (CC&Rs). A default in the obligation for which said CC&Rs has occurred in that
the payment(s) have not been made of homeowners assessments due from  and all subsequent
assessments, late charges, interest, collection and/or attorney fees and costs.
Dated: July 12, 2011

Amanda Davis, Alessi & Koenig, LLC on behalf of Sommerset Homeowners Association

WFB 000074


EXHIBIT
27

ALESSI
&
KOENIG
9500 W. Flamingo Rd. Suite 100
Las Vegas, NV 89147

WELLS FARGO HOME MORTGAGE
MIN 100071907010124913
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

55440#1629 BC45



UNITED STATES POSTAGE
PITNEY BOWES
02  1P     $ 000.44⁰
0004190236  AUG 27 2011
MAILED FROM ZIP CODE 89135

RECEIVED
SEP 01 2011
LIEN RELEASE-Mis
X9901-11R

WFB 000075